**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROVIER CARRINGTON, | |
| *Plaintiff,* | Case No. 18-cv-04609 (KPF) |
| v. | The Honorable Katherine Polk Failla |
| BRIAN GRADEN, BRIAN GRADEN MEDIA, LLC, VIACOM, INC., VIACOM INTERNATIONAL, INC., PARAMOUNT PICTURES CORPORATION, BRAD GREY, BRAD GREY ESTATE, BRAD ALAN GREY TRUST, | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR TERMINATING SANCTIONS AND ATTORNEYS' FEES AGAINST PLAINTIFF

Stanton L. Stein
Diana A. Sanders
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474

*Counsel for Defendants Brian Graden*
*and Brian Graden Media, LLC*

Wook Hwang
Sarah Schacter
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
Telephone: (212) 407-4000

*Counsel for Brad Grey, Brad Grey*
*Estate and Brad Alan Grey Trust*

Stephen Fishbein
Christopher LaVigne
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4424

*Counsel for Viacom Inc., Viacom International Inc.*
*and Paramount Pictures Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..............................................................................................iii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ...................................................................................................................3

    I.    DEFENDANTS RAISE CONCERNS REGARDING AUTHENTICITY OF
         EVIDENCE AT THE OUTSET OF THE LITIGATION AND PRESENT
         EVIDENCE OF FABRICATION ........................................................................3

    II.    THE COURT ORDERS LIMITED, EXPEDITED DISCOVERY ON THE
         ISSUE OF AUTHENTICATION.........................................................................5

    III.    DEFENDANTS ISSUE A RULE 11 LETTER AND NOTICE TO
         PLAINTIFF AND HIS COUNSEL....................................................................8

    IV.    ADDITIONAL COURT ORDERED DISCOVERY CONFIRMS
         FABRICATION, DESTRUCTION OF EVIDENCE, AND
         MISREPRESENTATIONS TO THE COURT ....................................................9

ARGUMENT.......................................................................................................................13

    I.    PLAINTIFF'S FABRICATION OF EVIDENCE IS A FRAUD ON THE
         COURT AND THE LAWSUIT MUST BE DISMISSED WITH
         PREJUDICE.......................................................................................................13

         A.    The Court Has The Authority To Dismiss The Action With
             Prejudice ................................................................................................13

         B.    Plaintiff's Fabrication Warrants Dismissal With Prejudice.....................14

    II.    DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE
         PLAINTIFF DESTROYED EVIDENCE THAT GOES TO THE HEART
         OF THE ACTION ............................................................................................18

         A.    The Court Has The Authority to Dismiss An Action For Spoliation
             of Evidence ............................................................................................18

         B.    Plaintiff's Spoliation Warrants Dismissal With Prejudice ......................19

    III.    DISMISSAL WITH PREJUDICE IS FURTHER WARRANTED
         BECAUSE PLAINTIFF'S CLAIMS ARE FRIVOLOUS, BROUGHT FOR
         AN IMPROPER PURPOSE, AND CARRIED THROUGH IN BAD FAITH ....21

    IV.    DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS .....23

V.   REFERRAL TO THE UNITED STATES ATTORNEY'S OFFICE IS
     APPROPRIATE ................................................................................................ 24

VI.  AT MINIMUM, AN EVIDENTIARY HEARING SHOULD BE
     CONDUCTED .................................................................................................. 24

CONCLUSION ............................................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Addington v. Texas*, 441 U.S. 418 (1979) .................................................................................14

*Ades v. 57th St. Laser Cosmetica, LLC*, No. 11 CIV. 8800 KNF, 2013 WL
2449185 (S.D.N.Y. June 6, 2013)............................................................................................24

*Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401 (S.D.N.Y. 2016) .........16

*Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2013 WL 1208558 (W.D.N.Y. Mar. 26,
2013), *report and recommendation adopted*, No. 10-CV-00569-A, 2014 WL
1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 F. App'x 34 (2d Cir. 2015)........13, 14, 16, 21

*Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573 (S.D.N.Y. 1996) ...................................... 14, 23

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ...................................................................... 13, 22

*ComLab, Corp. v. Kal Tire & Kal Tire Mining Tire Grp.*, No. 17-cv-1907 (KBF),
2018 WL 4333987 (S.D.N.Y. Sep. 11, 2018)................................................................*passim*

*Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420 (S.D.N.Y. 1976)...................................25

*Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922 (2d Cir. 1998)............................................24

*Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423 (2d Cir. 2001)......................................................19

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997) ...................23

*Kronisch v. United States,* 150 F.3d 112 (2d Cir. 1998)...............................................................19

*Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607 (2d Cir. 2014) ..................21

*Miller v. Bridgeport Bd. of Educ.*, No. 12-CV-1287 (JAM), 2014 WL 3738057
(D. Conn. July 30, 2014) .........................................................................................................22

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976) ...................................13

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F.
Supp. 2d 456 (S.D.N.Y. 2010).................................................................................................19

*Reilly v. NatWest Mkts. Grp.*, 181 F.3d 253 (2d Cir. 1999)........................................................18

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002) ......................18

*S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157 LAK AJP, 2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) ........................................................................ 22

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) .................................. 22

*Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425 (S.D.N.Y. 2002), *aff'd*, 81 F. App'x 396 (2d Cir. 2003) .......................................................................................................... 14

*Shangold v. Walt Disney Co.*, 275 F. App'x 72 (2d Cir. 2008) .......................................... 14, 23

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012) ........................................................................................................ 8

*Thiele v. Oddy's Auto & Marine, Inc.*, 906 F. Supp. 158 (W.D.N.Y. 1995) ............................ 19

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ............ 22

*United States v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985) ..................................................... 14

*United States v. Cornielle*, 171 F.3d 748 (2d Cir. 1999) ......................................................... 24

*West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776 (2d Cir. 1999) ......................................... 18

*Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512 (S.D.N.Y. 2017) ........................... 25

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) ........................................... 19

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... 8, 16, 22, 23

Fed. R. Civ. P. 11(b) ...................................................................................................... 21, 23

Fed. R. Civ. P. 11(c) .............................................................................................................. 1

Fed. R. Civ. P. 11(c)(4) ........................................................................................................ 23

Fed. R. Civ. P. 37(b) ...................................................................................................... 18, 19

Fed. R. Civ. P. 37(b)(2)(A) .................................................................................................... 1

Defendants Brian Graden, Brian Graden Media, LLC, Brad Grey, Brad Grey Estate, Brad Alan Grey Trust, Viacom Inc., Viacom International Inc., and Paramount Pictures Corporation (collectively "Defendants"), by their respective attorneys Russ August & Kabat, Loeb & Loeb LLP and Sherman & Sterling LLP, respectfully submit this memorandum of law in support of their motion, pursuant to the Court's inherent authority and Rules 11(c) and 37(b)(2)(A) of the Federal Rules of Civil Procedure, for terminating sanctions and attorneys' fees based upon Plaintiff Rovier Carrington's:  (1) fraud on the Court in fabricating the "At-Issue Communications" that serve as the foundation for this action;[1] (2) deliberate and complete spoliation of evidence associated with the At-Issue Communications, including email accounts and devices from which these At-Issue Communications were purportedly sent; (3) willful violation of the Court's August 7, 2018 Order directing that all parties preserve the At-Issue Communications; and (4) bad faith and improper filing of this lawsuit and continuing misconduct and false statements throughout the pendency of this litigation.

## PRELIMINARY STATEMENT

After a year of litigation and limited discovery, incontrovertible facts establish that this lawsuit is nothing more than a fraud on the Court and Defendants.  Plaintiff has fabricated and falsified the At-Issue Communications upon which this action is based; perpetrated a total spoliation campaign in an attempt to destroy all evidence relating to these purported communications; and taken every other conceivable measure to obstruct this Court's and Defendants' investigation into his fraud, including through repeated misrepresentations to the Court regarding the genesis and source of the At-Issue Communications.

---

[1] The "At-Issue Communications" are defined in the Court's August 7, 2018 Order.  [Dkt. No. 64].

For close to a year, the Court and the Defendants have devoted extensive resources navigating through Plaintiff's maze of obfuscation in an effort to get to the bottom of the authenticity of the evidence upon which this action is founded.  The actual evidence confirms Plaintiff's fraud, including through the sworn declarations of non-parties with whom Plaintiff claims to have exchanged the At-Issue Communications, multiple forensic examinations of the relevant email accounts, and information obtained pursuant to court-ordered subpoenas from Google, Microsoft and GoDaddy (the internet service providers ("ISPs") that hosted Plaintiff's various email accounts).  Equally probative of this fraud are the premeditated actions Plaintiff took to try to cover his tracks—deactivating and deleting relevant email accounts, discarding the supposedly lone device that was used to transmit the At-Issue Communications, and delaying the production of responsive information in contravention of Court Orders.  This spoliation campaign has not only deprived the Court and Defendants of critical, exculpatory evidence, but it serves to underscore what the evidence already establishes—that *none* of the disputed At-Issue Communications ever existed, and that they were fabricated to perpetrate a fraud on this Court.

Accordingly, this case should be dismissed with prejudice and Plaintiff should be required to pay Defendants' attorneys' fees and costs associated with defending against this frivolous lawsuit.  In addition, based on the egregious conduct set forth herein, this matter should be referred to the United States Attorney's Office for criminal investigation.  In the alternative, and at absolute minimum, an evidentiary hearing should be ordered at which Defendants intend to call Plaintiff Carrington and his former counsel as witnesses.

## BACKGROUND

### I.   DEFENDANTS RAISE CONCERNS REGARDING AUTHENTICITY OF EVIDENCE AT THE OUTSET OF THE LITIGATION AND PRESENT EVIDENCE OF FABRICATION

Plaintiff, self-proclaimed "Hollywood royalty," filed the Complaint in this action in New York state court on May 2, 2018, asserting an amalgam of claims based upon allegations of sexual assault, unfair competition, fraud and misappropriation of his alleged work, and federal antitrust violations.  Within days of its filing, Defendants raised concerns about authenticity of the allegations and evidence referenced in the Complaint.  Counsel for Brian Graden advised Plaintiff's then-counsel, the Landau Group ("Landau Firm"), on or about May 3, 2018 that certain of the documents and information referenced in Plaintiff's Complaint appeared inaccurate and that the Landau Firm should look further into the veracity of the allegtions.  [*See* Declaration of Stanton L. Stein ("Stein Decl."), ¶ 2].  Defendants thereafter sent preservation notices to Plaintiff and his counsel on May 21, 2018, May 22, 2018, June 20, 2018 and June 21, 2018. [Stein Decl. Exs. A and B].

Defendants reiterated these authenticity concerns with the Court in their June 14, 2018 pre-motion to dismiss letters, specifically referencing evidence of fabrication of an October 24, 2017 email, allegedly between Plaintiff and non-party Darren Stein that was quoted in the Complaint.  [Dkt. No. 31].  Despite being put on repeated notice of these concerns, Plaintiff "doubled down" and chose to amend the Complaint four days later (on June 18) and attach 11 exhibits to it, which included the At-Issue Communications.  These At-Issue Communications consist of 40 emails, supposedly exchanged with Brian Graden and non-parties (Darren Stein and Reno Logan) that purportedly substantiate and corroborate Plaintiff's explosive claims.  [Dkt. No. 40].  These attached emails include:  (1) Exhibits 2-6, purported communications with Reno Logan through Plaintiff's trendsetterrovheir@gmail.com email account (the "Trendsetter

Account"); (2) Exhibits 8-9, purported communications with Brian Graden through Plaintiff's roviercarrington@gmail.com email account (the "Existing Account"); and (3) Exhibits 10-11, purported communications with Brian Graden and non-party Darren Stein through Plaintiff's rovier@thecarringtondiaries.com email account (the "Carrington Diaries Account").[2]  *Id.*  All of the At-Issue Communications were attached to the Amended Complaint as forwarded emails to the Landau Firm, rather than as native, stand-alone email communications.

The very next day after filing the Amended Complaint—and despite being in receipt of a preservation notice sent by counsel for Brian Graden weeks earlier—Plaintiff deactivated the Trendsetter Account, which supposedly was the source of some of the most explosive allegations against defendant Brad Grey.  [Stein Decl. Ex. P].  Around this same timeframe, in June 2018, Plaintiff also discarded his iPhone 7 by returning it to Apple, which iPhone Plaintiff now claims was the only device he used to transmit all of the At-Issue Communications.  Feb. 7, 2019 Tr. at 11:11-16 (Carrington advising the Court that "I sent [the At-Issue Communications] from my iPhone 7"; "I returned [the iPhone 7] to Apple . . . [in] June of 2018").

After the filing of the Amended Complaint, Defendants provided Plaintiff and the Court with additional evidence that certain of the At-Issue Communications were fabricated.  This evidence included:

- Two declarations from non-party Darren Stein stating that Exhibit 11 was never exchanged and was fabricated.  Darren Stein's declaration attached the actual, and only, email exchange with Plaintiff (an email dated October 9, 2017 and its October 24, 2017 response).  This email exchange ***did not contain*** the alleged, key language against Brian Graden, upon which Plaintiff relies to support his claim for tortious interference against Graden.  [*See* Stein Decl. Exs. C and F].

- A declaration from a forensics expert who conducted an analysis of Darren Stein's email account and confirmed that the attached email to Darren Stein's declaration, *see supra* (the October 9, 2017 exchange), is identical to the one that exists in native form

---

[2] Exhibit 7 included purported communications between Plaintiff and an employee of HBO, which Plaintiff has also never been able to produce in native form.

in Stein's account.  The expert further affirmed that there were no other email exchanges with Mr. Carrington in Stein's account.  [*See* Stein Decl. Exs. D and E].

- A declaration from a forensics expert who conducted an analysis of Mr. Graden's email account and confirmed that Exhibits 8-10 do not exist in Graden's account. The expert did identify disparate emails that each contained portions of some of the emails in Exhibits 9 and 10, which Plaintiff apparently lifted from the actual emails and then pasted together to fabricate the contents of the email strings that are Exhibits 9 and 10.  [*See* Stein Decl. Ex. D].

- A declaration from non-party Reno Logan, who unequivocally declared that Exhibits 2 through 6—email communications purportedly between him and Plaintiff via the Trendsetter Account—were fabricated and false.  [*See* Stein Decl. Ex. G].

## II.   THE COURT ORDERS LIMITED, EXPEDITED DISCOVERY ON THE ISSUE OF AUTHENTICATION

Based on this evidence of fabrication, Defendants requested that Plaintiff produce native versions of the At-Issue Communications and sought limited discovery on the issue of authentication from the Court.  Plaintiff vigorously opposed any inquiry into the authenticity issue and resisted the sharing of information, demanding instead that the case proceed in the normal course.  [Dkt. No. 56].  The Court, however, issued on August 7, 2018 an Order specifically directing all parties to "immediately preserve each and every document constituting or containing any portion of any of the [At-Issue Communications]" and ordered expedited discovery on the limited issue of authentication.  [Dkt. No. 64].  Pursuant to the Court's August 7 and August 22, 2018 Orders [Dkt. Nos. 64, 70], FTI Consulting ("FTI") was selected as the neutral forensic examiner and tasked with attempting to obtain from Plaintiff the original "native" versions of each of the 40 At-Issue Communications for the purpose of ascertaining their authenticity.  Despite being provided access to Plaintiff's Carrington Diaries Account and the Existing Account in late August 2018, and despite Plaintiff's and counsel's representations that these emails were forwarded by Plaintiff to the Landau Firm as recently as February through May 2018, FTI was able to locate only one of the 40 At-Issue Communications from Plaintiff's

accounts in native form.  [Stein Decl. Ex. I].  That email—the October 9, 2017 exchange from Plaintiff to Darren Stein, *see supra*—is the *only* one of the At-Issue Communications as to which authenticity is not in dispute.  None of the other 39 At-Issue Communications were found to exist in Plaintiff's email accounts in native form.  Further, FTI could not access Plaintiff's Trendsetter Account, as Plaintiff advised that it had been deactivated "for years."  [Stein Decl. Ex. H; Sep. 18, 2018 Tr. at 34:6-19].

Notably, while FTI found none of the disputed At-Issue Communications in native form, it did find certain of the At-Issue Communications in the form of the easily manipulated forwards sent to the Landau Firm in 2018 from the Carrington Diaries Account.  [*See* Stein Decl. Exs. J, L at 3].  These forwarded emails primarily consist of emails that (on their face) were purportedly forwarded from either the Trendsetter Account or the Existing Account to the Carrington Diaries Account, and then forwarded from the Carrington Diaries Account to the Landau Firm.  [Stein Decl. Ex. J].  Critically, *none* of the initial purported forwarded emails were found in the Carrington Diaries Account by FTI, even though Plaintiff purportedly sent them to the Carrington Diaries Account as recently as February to May 2018.  *Id.*  And equally fatal to Plaintiff's claim is that, according to his own expert, Plaintiff transferred the content of the Trendsetter Account to the Carrington Diaries Account in October 2017, but *none* of the native At-Issue Communications from the Trendsetter Account were located in the Carrington Diaries Account.  [Stein Decl. Ex. N, Affidavit of K. Gus Dimitrelos at ¶ 13].  In sum, the 39 disputed At-Issue Communications should have existed in one form or another in the Carrington Diaries Account—to the extent they ever existed at all—but *none* were located, either in their original

native form or in the form of forwards from Plaintiff's other accounts.

Not surprisingly, when the results of FTI's analysis emerged, Plaintiff switched tactics and claimed that the Existing Account and the Carrington Diaries Account were "hacked" on May 24, 2018 and August 2018, respectively. [Dkt. No. 76; Sep. 18, 2018 Tr. at 37:10-11]. Tellingly, neither Plaintiff nor his counsel raised this alleged "hack" at any time before FTI was engaged or before the Court ordered Plaintiff to disclose the content of his email accounts to FTI as part of the expedited discovery Order. [*See* Sept. 18, 2018 Tr. at 35]. In the words of the Court, this led Defendants on a "seven-week frolic and detour" for reasons that continue to be unexplained. [Sept. 18, 2018 Tr. at 38-39]. To date, no credible evidence has emerged that corroborates Plaintiff's contention of a hack, let alone that this supposed hacker fortuitously saw fit to delete the contents of the Existing Account weeks after Plaintiff received preservation notices, or to delete all At-Issue Communications ***but inexplicably leave untouched the one email from Darren Stein that has never been in dispute and the supposed "forwards" to the Landau Firm in February to May 2018.*** The August 7 and August 22, 2018 Court Orders also required Plaintiff to turn over his iPhone X to FTI for mirror-imaging. Plaintiff refused to comply with this requirement, despite counsel's representation to Defendants and to the Court that Plaintiff used this iPhone to transmit the At-Issue Communications to counsel. [Dkt. No. 76]. Given FTI's inability to locate the At-Issue Communications, the Court granted the Defendants' request to issue subpoenas to Google and Microsoft to try to recover the At-Issue Communications, and instructed again that FTI be provided Plaintiff's iPhone X for mirror-imaging this evidence.

### III.     DEFENDANTS ISSUE A RULE 11 LETTER AND NOTICE TO PLAINTIFF AND HIS COUNSEL

On October 2, 2018, Defendants served on Plaintiff, through the Landau Firm, a Notice of Motion and letter providing notice of the Defendants' intent to move for Rule 11 sanctions. [*See* Stein Decl. Ex. M].  In this letter, Defendants detailed their positions, provided relevant legal support, and advised Plaintiff and his counsel that Defendants would proceed to file the instant motion if the Amended Complaint was not withdrawn within 21 days.  *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012) (holding that service of Rule 11 letter and notice of motion were sufficient to trigger 21-day safe harbor period).  Neither Plaintiff nor his counsel took remedial actions during the safe harbor period and instead ignored the notice.

The Landau Firm subsequently withdrew from the case as of October 5, 2018.  [Dkt. No. 82].  Between May 3, 2018—when Graden's counsel first made Kevin Landau aware of the false allegations—and October 5, 2018, when the Landau Firm withdrew, the Landau Firm served on the front lines of Plaintiff's fraud.  The Landau Firm furthered Plaintiff's efforts to delay inquiry into the At-Issue Communications, made numerous misrepresentations to the Court, and generally perpetuated Plaintiff's wrongdoing despite being put on notice of the fraudulent conduct of its client.  Among other things, the Landau Firm further claimed in an August 24, 2018 email that Plaintiff's Trendsetter Account had been "deactivated" years before the filing of this action (Stein Decl. Ex. H; Sep. 18, 2018 Tr. at 34:6-19), raised frivolous challenges to every neutral forensic examiner suggested by the Defendants in a thinly veiled attempt to put off FTI's examinations of Plaintiff's email accounts and iPhone X (Dkt. No. 69), and ultimately failed to obtain and present Plaintiff's iPhone X for imaging (Dkt. No. 76).

## IV.   ADDITIONAL COURT ORDERED DISCOVERY CONFIRMS FABRICATION, DESTRUCTION OF EVIDENCE, AND MISREPRESENTATIONS TO THE COURT

On February 7, 2019, the Court held a telephonic conference with all parties to address next steps concerning the outstanding and delayed discovery into authenticity issues as well as a motion for sanctions that Defendants intended to file.[3]   Thereafter, on February 13, 2019, the Court ordered that subpoenas be issued to GoDaddy, Microsoft, and Google (the ISPs for Plaintiff's email accounts) in order to obtain all subscriber and non-subscriber information recoverable, and that FTI conduct an analysis of Plaintiff's iPhone X and of any emails produced by the ISPs.   [Dkt. No. 102].   The parties received responses to the subpoenas and the results of FTI's analysis of Plaintiff's iPhone X in or about March 2019.

**The Trendsetter Account**:   Google's subpoena response debunked Plaintiff's repeated representations to the Court and to counsel regarding the Trendsetter Account, including that it had been deactivated "for years."   [*See* Stein Decl. Ex. H; Sep. 18, 2018 Tr. at 38:11-14].   The information produced by Google instead established that the Trendsetter Account was deactivated on June 19, 2018, during the pendency of litigation.   [Stein Decl. Ex. P].   Critically, this was **one day after** Plaintiff filed the Amended Complaint, which attached Exhibits 2 to 7 (the explosive emails allegedly sent from the Trendsetter Account).   As a result of the deactivation, no emails from to the Trendsetter Account are recoverable, including any natives that purportedly existed in this account or that were purportedly forwarded from that account to the Carrington Diaries Account as Plaintiff's supposed email chain suggests.   *Id.*

---

[3] Between October and January, the authenticity issues were put on hold in light of Plaintiff's counsel seeking to withdraw from the case, Plaintiff then attempting to move to transfer the case to California (which was later withdrawn), Plaintiff refusing to accept service at his designated address, and Plaintiff seeking extensions of time to file required papers based on retention of new counsel although no new counsel has yet officially surfaced.

**The Carrington Diaries Account**:  Information from Microsoft and GoDaddy revealed

that the Carrington Diaries Account ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████  *See* Stein Decl. Exs. R and S].  Indeed, the information produced by

GoDaddy further shows ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  [Stein Decl. Ex. S at GD00008].  GoDaddy's

production further shows ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  *Id.*

Moreover, the information from Microsoft and GoDaddy ████████████████

████████████████████████████████████████████████

████████████████████████████████.  Plaintiff's contention was solely based on his allegation

that he provided Mr. Graden his password sometime in 2015 (which Mr. Graden denies ever

occurred) and that he never changed his password.  [Sep. 18, 2018 Tr. at 32:2-5; 45:24-25].  ████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████  [Stein Decl. Ex. S at GD00009- GD00010].

**The Existing Account**:  Google produced all recoverable content-related documents

from the Existing Account to FTI.  The forensic analysis conducted by FTI revealed that its

"search process did not identify any original instances of the At-Issue Communications." [Stein Decl. Ex. Q]. It therefore is undisputed that Plaintiff's lone active and relevant email account has no native versions of the At-Issue Communications and that Plaintiff deleted the entire contents of the two other accounts from which these Communications purportedly came.

**The iPhone X:** FTI also conducted a forensic analysis of Plaintiff's iPhone X, which Plaintiff and counsel previously represented was used to transmit the At-Issue Communications to counsel. [Dkt. No. 76]. In a last ditch effort to avoid disclosing this device, Plaintiff did an "about face" and claimed that his counsel "misrepresented" this fact to the Court and the parties. [*See* Stein Decl. Ex. N at 2]. Plaintiff claimed that he sent the At-Issue Communications from an iPhone 7 that he discarded by turning it into Apple in June 2018 (again, after his receipt of multiple preservation notices). [Feb. 7, 2019 Tr. at 11:11-16]. Plaintiff represented to this Court that he *did not* migrate his data from his old iPhone 7 to his new and current iPhone X and therefore did not have any of his email accounts linked to it. [Feb. 7, 2019 Tr. at 13:1-7]. The FTI analysis found—contrary to Plaintiff's latest representations—that "Mr. Carrington's data *was* migrated from his previous iPhone." [Stein Decl. Ex. O] (emphasis added). FTI further found that multiple Apple ID accounts were linked to the iPhone X, including the Existing Account and the Trendsetter Account. *Id*. Despite having migrated these accounts from his previous phone, "[n]o instances of the At- Issue Communications were identified" in the iPhone X, further confirming that the At-Issue Communications were fabricated. *Id*.

**The iPhone 7:** Moreover, Plaintiff's statements to the Court on February 7, 2019 regarding the iPhone 7 are demonstrably false and corroborate that he fabricated the At-Issue Communications. Specifically, Plaintiff unequivocally declared that he sent and received any and all At-Issue Communications from his iPhone 7 and no other devices:

> THE COURT: Mr. Carrington, you believe that there are e-mails or text messages that support your case, correct, sir?
>
> MR. CARRINGTON: Yes, your Honor.
>
> THE COURT: And how were those -- to the extent that you sent those e-mails or texts [referring to the At-Issue Communications], did you send them from a single device or from multiple devices?
>
> MR. CARRINGTON: I sent them from my iPhone 7….
>
> THE COURT: And all of the texts and all of the e-mails that are at issue in your lawsuit were sent or received on the iPhone 7?
>
> MR. CARRINGTON: That is correct.

*Id*. at 11:5-11, 12:12-15.

> THE COURT: Why I'm asking the question that way, sir, is that I will ask you this follow-up question. There is no laptop or iPad or PDA that you use to send or receive these communications? Everything is on the iPhone 7?
>
> MR. CARRINGTON: Correct, your Honor. I never used my iPad or MacBook to ever send these e-mails.

*Id*. at 12:16-21.   As noted above, Plaintiff thereafter claimed that he returned this iPhone 7 to Apple in June 2018.  *Id*. at 11:12-16.

Plaintiff's definitive statements were no doubt a misguided attempt to inoculate himself from further examination or questioning about the authenticity of the At-Issue Communications. By making the absurd claims that he used only the iPhone 7 to transmit or receive all At-Issue Communications over a seven year period (spanning from 2010 to 2017), that the iPhone 7 was discarded in June 2018, and that all relevant email communications had been hacked and/or deleted, Plaintiff hoped the inquiry would end.  Critically, however, Apple did not even release the iPhone 7 to the consuming public until September 7, 2016.  *See*

https://www.apple.com/newsroom/2016/09/apple-introduces-iphone-7-iphone-7-plus/ (last visited May 9, 2019).  Apple's release of the iPhone 7 was long after the dates on which Plaintiff purportedly transmitted the At-Issue Communications referenced in Exhibits 2-9, which supposedly range from 2010 to 2014.  It therefore was impossible for Plaintiff to have sent the vast majority of the At-Issue Communications from his iPhone 7.  This serves as additional, corroborative evidence that Plaintiff lied to the Court, fabricated the At-Issue Communications, and attempted to delete any evidence that could call into question his self-serving statements.

## ARGUMENT

I.   **PLAINTIFF'S FABRICATION OF EVIDENCE IS A FRAUD ON THE COURT AND THE LAWSUIT MUST BE DISMISSED WITH PREJUDICE**

A.   **The Court Has The Authority To Dismiss The Action With Prejudice**

It is well-settled that the Court has the inherent power to impose sanctions and dismiss a lawsuit with prejudice that is based on fraud and/or fabricated evidence.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("outright dismissal of a lawsuit" under the court's inherent authority "is within the court's discretion").  The purpose of this power is to ensure that courts do not "permit a plaintiff who is perpetrating a fraud on the court to run roughshod over the court's integrity." *Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2013 WL 1208558, at *11 (W.D.N.Y. Mar. 26, 2013), *report and recommendation adopted*, No. 10-CV-00569-A, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 F. App'x 34 (2d Cir. 2015).  Dismissal for fraud also serves an important preventative function by "deter[ring] those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).  Courts have emphasized the heightened need to apply this doctrine "where, in this era, significant fraud may be perpetrated by the use of sophisticated

technology such as computers, for which expert forensic analysis is required to assist the court in discovery of the fraud." *Ceglia,* 2013 WL 1208558, at *11.

"In order for the Court to grant sanctions based upon such a fraud, it must be established by clear and convincing evidence." *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002), *aff'd*, 81 F. App'x 396 (2d Cir. 2003).  This clear and convincing standard is "something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (citing *Addington v. Texas*, 441 U.S. 418, 431 (1979).  In other words, it is evidence that makes a particular conclusion "highly probable or reasonably certain." *Ceglia,* 2013 WL 1208558, at * 15.  Courts in this circuit routinely dismiss cases and award attorneys' fees and costs where, as here, a party establishes by clear and convincing evidence that a litigant fabricated evidence and provided false testimony.  *See, e.g., Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73-74 (2d Cir. 2008) (affirming dismissal of complaint and award of attorneys' fees as sanctions after finding that plaintiffs fabricated evidence); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 583-84 (S.D.N.Y. 1996) (entering judgment for plaintiff on merits and imposing as sanction costs and attorneys' fees against defendant who presented fabricated invoices and false deposition testimony to make it appear as though an agreement remained in force).

### B.    Plaintiff's Fabrication Warrants Dismissal With Prejudice

As early as July 17, 2018, the Court provided explicit warning and notice to Plaintiff's counsel that the Court *will* dismiss this case if it discovers that the Darren Stein email (*i.e.* Exhibit 11 to the Amended Complaint) was fabricated.  *See* July 17, 2018 Tr. at 7:13-15 ("[I]f I find out later in this case that that document is fabricated, I will dismiss the case."); *see also id.* at 7:18-8:25.  Plaintiff did not heed this warning.  Now, the overwhelming evidence summarized above shows that, not only is the Darren Stein email fabricated, but Plaintiff has fabricated

additional documents and made numerous material misrepresentations to the Court to prevent Defendants' discovery of the fraud.  Two independent non-parties (Darren Stein and Reno Logan), two forensics companies (FTI and Transperfect), and three ISPs (Google, Microsoft, and GoDaddy) have put forward evidence in this case, **all** of which shows that the At-Issue Communications do not exist and were fabricated in a systemic effort to maintain Plaintiff's implausible and frivolous claims.

The uncontroverted forensic and testimonial evidence shows:

- Exhibits 2-6 – purported communications with non-party Reno Logan via the Trendsetter Account – cannot be produced in native form by Plaintiff because natives do not exist.  Google revealed that the account was closed on June 19, 2018 (the day after the filing of the Amended Complaint) by Plaintiff and that all emails in the account have since been destroyed.  [Stein Decl. Ex. P]. Reno Logan has provided a sworn affidavit that unequivocally states that these purported communications were never exchanged.  [*Id.* Ex. G].

- Exhibits 8-10 – purported communications with Brian Graden via the Existing Account and Carrington Diaries Account – cannot be produced in native form by Plaintiff because natives do not exist.  The Carrington Diaries Account was deactivated in September 2018, at which time Plaintiff deleted all emails in the account. [Stein Decl. ¶ 20, Ex. R].  A forensic examination into the Existing Account by FTI and subpoena results from Google identified none of these Exhibits in native form. [*Id.* Ex. Q]. These results are confirmed by a forensic analysis of Mr. Graden's email account, which concluded that Exhibits 8-10 do not exist. [*Id.* Ex. D]. The examination further revealed that fragments of actual emails Mr. Graden sent to Plaintiff were copied from those actual emails and pasted into fabricated ones, apparently to create Exhibits 9 and 10. [*Id.*].

- Exhibit 11 – purported communications with Darren Stein using the Carrington Diaries Account – cannot be produced in native form by Plaintiff because the native does not exist.  A forensic analysis of Darren Stein's email account and two separate declarations from Darren Stein produced the only communication exchange between Darren Stein and Plaintiff and confirmed that the version of the communication supplied as Exhibit 11 contains an altered version of this email with additional language relating to Brian Graden (which the original does not contain).  [*See* Stein Decl. Exs. C-F].  To be exact, Exhibit 11 includes the text "after speaking with Brian Graden," upon which Plaintiff relies as his sole evidence to show tortious interference by Graden.  But the original native version produced by Darren Stein, and obtained through a forensic analysis of Darren Stein's email, shows that the real email does *not* contain the alleged

15

additional language.  [*See id.*].  Accordingly, ***the uncontroverted forensic and testimonial evidence conclusively shows that Exhibit 11 was fabricated.***

- Forwarded Emails – FTI's identification of forwarded, purported At-Issue Communications from the Carrington Diaries Account further supports fabrication, since the Carrington Diaries Account contained none of the incoming forwarded emails from the Trendsetter Account and Existing Account, nor any of the relevant Trendsetter Account emails (even though Plaintiff claims to have transferred the entire contents of that account to the Carrington Diaries Account in October 2017).  [*See* Stein Decl. Ex. N].

The exhibits appended to the Amended Complaint are the fulcrum facts underpinning Plaintiff's allegations of sexual assault, misappropriation and fraud, unfair competition, purported blacklisting, and related claims.  Plaintiff repeatedly cited to them in his Amended Complaint, and principally amended the Complaint by appending them to this operative document.  As these fabrications form the centerpiece of his allegations, dismissal of the Amended Complaint with prejudice is the only viable option.  *See, e.g., Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) (granting Rule 11 motion to dismiss action and finding that "where the misconduct at issue is the knowing fabrication of the critical allegations underlying the complaint that plaintiff must prove in order to recover, it would be pointless to allow the case to proceed"); *Ceglia*, 2013 WL 1208558, at *57 (dismissing action with prejudice because "based on the evidence in the record, it is highly probable and reasonably certain that the Work for Hire Document and the supporting e-mails were fabricated for the express purpose of filing the instant action.").

This case is closely analogous to *ComLab, Corp. v. Kal Tire & Kal Tire Mining Tire Grp.*, No. 17-cv-1907 (KBF), 2018 WL 4333987 (S.D.N.Y. Sep. 11, 2018).  In *ComLab*, plaintiff sued for breach of contract and produced six emails attaching invoices that purported to constitute highly relevant evidence of a contract between the parties.  *Id.* at *1-2.  The defendants contested the authenticity of the emails and invoices and demanded production of the native

16

versions.  *Id.*  After agreeing to produce the native copies, plaintiff ultimately failed to do so and instead claimed that the native versions were deleted from the device on which they were stored in order to contain a computer virus.  *Id.* at *2.  Based on the inability to independently verify the existence of the emails and plaintiff's inability to produce the native versions, Judge Forrest granted sanctions for fraud on the court and dismissed the action with prejudice, reasoning, "ComLab not only intentionally fabricated critical evidence, thereby perpetuating a fraud on the Court, it subsequently spoliated evidence that was critical to Kal Tires defense in this case—let alone the Court's ability to easily determine whether fabrication occurred."  *Id.* at *8.

Moreover, throughout this litigation, Plaintiff has put forward no credible explanation as to why he simply cannot produce native versions of the At-Issue Communications, which is remarkable considering that they form the centerpiece of his suit and that he supposedly forwarded them to his prior counsel before the Amended Complaint was filed, as recently as February to May 2018.  [*See* Stein Decl. Ex. J].  Plaintiff's explanations for this inability have run the gamut.  They include a purported "hack" that took place across two of his Accounts (Dkt. No. 76), which surfaced only ***after*** FTI reviewed two of his Accounts and found no native versions of the disputed At-Issue Communications, and which ███████████████████████.  [Stein Decl. Ex. S].  Most recently, Plaintiff attributes his inability to supply native emails to the fact that he transmitted the At-Issue Communications solely through his iPhone 7, which he turned into Apple in June 2018.  Not only is this a total "about face" from prior representations [Dkt. No. 76], it is a legal impossibility as Apple did not even publicly release the iPhone 7 until September 7, 2016, long after the vast majority of At-Issue Communications were allegedly exchanged.

17

As Judge Forrest found in *ComLab*, in reasoning that should be followed here, Plaintiff's "overall lack of credibility and inability to produce a *shred* of corroborative, objective evidence leaves no question in the Court's mind that the contested documents were fabricated."  2018 WL 4333987, at *8 (emphasis in original).  These actions warrant dismissal with prejudice and payment of attorneys' fees in defending against this outright fraud on the Court and the parties.

## II.    DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE PLAINTIFF DESTROYED EVIDENCE THAT GOES TO THE HEART OF THE ACTION

### A.    The Court Has The Authority to Dismiss An Action For Spoliation of Evidence

Dismissal is warranted for the additional reason that Plaintiff destroyed evidence critical to the central issues in this case.  "It is well-established that a district court may impose sanctions for spoliation under Fed. R. Civ. 37(b), or, even in absence of a court order, pursuant to its inherent power to control litigation."  *ComLab*, 2018 WL 4333987, at *7.  A party seeking sanctions for spoliation of evidence must establish three elements, including "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  The moving party must establish spoliation by a preponderance of the evidence, *ComLab,* 2018 WL 4333987, at *7, and courts are given broad discretion to craft appropriate remedies, which are "molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."  *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999).  Where the spoliation is willful or the litigant has committed severe misconduct in the course of the litigation, the court has the power to dismiss the case with prejudice and award attorneys' fees.  *See West*, 167 F.3d at 779; *Reilly v. NatWest*

*Mkts. Grp.*, 181 F.3d 253, 267 (2d Cir. 1999); Fed. R. Civ. P. 37(b); *see also ComLab*, 2018 WL 4333987, at * 9.

### B.    Plaintiff's Spoliation Warrants Dismissal With Prejudice

Spoliation is easily satisfied in this case.  As an initial matter, it is well settled that the duty to ensure that relevant evidence is protected from loss or destruction predates the filing of the complaint and arises once litigation is reasonably anticipated.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) ("A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation."); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation . . . .").  Here, in addition to having a pre-filing duty to preserve relevant information, Plaintiff also received a preservation notice from Defendant Graden's counsel as early as May 21, 2018.  [Stein Decl. Ex. A].  Accordingly, by at least May 21, 2018, Plaintiff was on direct notice of his duty to preserve his files and documents.  In addition to the preservation notices sent by Defendants' counsel, the Court, in its order dated August 7, 2018, specifically directed all parties to "immediately preserve each and every document constituting or containing any portion of any of the [At-Issue Communications]."  [Dkt. No. 64].

Relatedly, "[o]nce a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence."  *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citing *Kronisch v. United States,* 150 F.3d 112, 126-27 (2d Cir. 1998)).  Where a party was at least negligent in destroying evidence, and the evidence is "critical to the central issue in the case," dismissal is warranted even in the absence of bad faith.  *See Thiele v. Oddy's Auto & Marine, Inc.*, 906 F. Supp. 158, 163 (W.D.N.Y. 1995) ("[W]ithout any ability to

examine the boat, [defendant] will be greatly frustrated in its ability to defend its case. Since [plaintiff] is plainly at fault for allowing the boat to be placed in a landfill, any claims against [defendant] must be dismissed.").

Here, Plaintiff not only ignored Defendants' preservation letters but also violated the Court's August 7, 2018 Order and deleted *all* relevant evidence from *all* of his email accounts and devices. This deprived Defendants of the ability to obtain exculpatory evidence that is critical to defending these allegations—namely, the unaltered content of email accounts and the iPhone 7, which would establish that the At-Issue Communications were fabricated and never exchanged with the purported recipients. Plaintiff's spoliation campaign included the following:

- Plaintiff deactivated the Trendsetter Account on June 19, 2018 (Stein Decl. Ex. P), despite repeatedly representing that the account had been deactivated for "years" (Stein Decl. Ex. H; Sep. 18, 2018 Tr. at 34:6-19);

- Plaintiff turned in his iPhone 7 to Apple in June 2018, despite now claiming that he only used that phone to send or receive all of the At-Issue Communications (Feb. 7, 2019 Tr. at 11:11-16);

- Plaintiff deleted the Carrington Diaries Account on September 8, 2018, more than one month after the Court's August 7, 2018 preservation order—an especially troubling development since Plaintiff claimed to have transferred the Trendsetter Account to the Carrington Diaries Account in October 2017. [Stein Decl. Ex. N, Affidavit of K. Gus Dimitrelos at ¶ 13].

And, as for the Existing Account and Plaintiff's iPhone X, Google's production and FTI's analysis confirmed that none of the At-Issue Communications were maintained in native form.

In short, it cannot be credibly disputed that Plaintiff has affirmatively sought to delete *all* traces of the email records that he filed as exhibits to the Amended Complaint *after* putting those exhibits at issue, *after* receipt of multiple preservation notices, and, most critically, *after* the Court's August 7, 2018 Order directing preservation. Defendants are now in an untenable position of being deprived of the ability to challenge in full the authenticity of the key evidence

20

that underlies Plaintiff's suit and that bears on Plaintiff's credibility.  In these circumstances, "the

only suitable sanction for such spoliation is dismissal of the action" because such "spoliation of

the evidence has placed Defendants at an increased risk of an erroneous judgment, and it is not

possible to restore Defendants to the position they would have been in absent the spoliation."

*Ceglia* 2013 WL 1208558, at *69; *see also Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551

F. App'x 607, 610 (2d Cir. 2014) (affirming sanction of dismissal where spoliation was

intentional and evidence was "central to [the defendant's] ability to challenge [plaintiff's]

claims").  This case is on all fours with *ComLab*, discussed *supra*, in which the Court

emphasized that:

> Indeed, in its efforts to defend against this litigation, Kal Tire has
> consistently disputed the authenticity of the Contested Invoices,
> and demanded—since at least January 2017—native versions of
> the Subject Emails that would allow Kal Tire's experts to assess
> their veracity. By permanently deleting native versions of the
> disputed documents, ComLab has deprived Kal Tire of its core
> defense and irreversibly prejudiced its ability to defend this
> litigation. . . .  [D]ismissal is the only appropriate sanction here.
> ComLab has acted willfully and in bad faith, and deprived Kal Tire
> of a meaningful opportunity to defend this lawsuit.

*ComLab, Corp.*, 2018 WL 4333987, at *9.  Considering that this spoliation was to obstruct an

investigation into a fraud on the Court, dismissal with prejudice is warranted.  *See id.* at *8.

## III.   DISMISSAL WITH PREJUDICE IS FURTHER WARRANTED BECAUSE PLAINTIFF'S CLAIMS ARE FRIVOLOUS, BROUGHT FOR AN IMPROPER PURPOSE, AND CARRIED THROUGH IN BAD FAITH

Under Rule 11(b) of the Federal Rules of Civil Procedure, a party and/or its counsel must

certify to the best of their knowledge, information and belief after an inquiry reasonable under

the circumstances, that any paper submitted to the court, among other things, (1) is not being

presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation; and (2) the factual contentions have evidentiary support.  "In

deciding whether a pleading or other filing violates Rule 11, the Court typically applies an objective standard of reasonableness." *S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157 LAK AJP, 2014 WL 6968039, at \*8 (S.D.N.Y. Dec. 9, 2014) (internal quotations omitted). In applying this standard, courts have found that "[a] party advances an objectively unreasonable claim if, at the time the party signed the pleading, it is patently clear that [the] claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Id.* (internal quotations omitted). Such adverse findings can be inferred from the facts and circumstances of the pleadings and through litigation conduct. *See, e.g., Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (stating that bad faith can be inferred when an action is "so completely without merit as to require the conclusion [it] must have been undertaken for some improper purpose"); *Chambers*, 501 U.S. at 46 (emphasizing that a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. . . .") (internal quotations omitted). Evidence of fabrication and spoliation are sufficient grounds to impose Rule 11 sanctions. *See, e.g., Miller v. Bridgeport Bd. of Educ.*, No. 12-CV-1287 (JAM), 2014 WL 3738057, at \*10 (D. Conn. July 30, 2014) (imposing Rule 11 sanctions after discovery where, but for "fabricated" allegations, "there [was] little likelihood that [plaintiff's] suit would have survived defendants' motion to dismiss"); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 371 (9th Cir. 1992) ("Whether [plaintiff's] filing of the suit after having spoliated evidence harmed [defendant] is a Rule 11 issue . . . .").

Plaintiff's deliberate fabrication of evidence, mass spoliation campaign, numerous misrepresentations to the Court and Defendants, and delays and evasive tactics, establish that Plaintiff's claims are objectively unreasonable and brought in bad faith in violation of Rule

11(b).  Plaintiff's creation of false evidence caused more than inconvenience or the expenditure of litigation resources.  The frivolous allegations, coupled with Plaintiff's fabricated evidence, subjected Defendants, particularly individual defendants Graden and the late Grey, to claims of heinous conduct with criminal implications.  Such allegations have directly affected Graden's career and livelihood and Grey's legacy.  Accordingly, the Amended Complaint should be dismissed with prejudice under Rule 11 and related sanctions should be imposed.

## IV.   DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

Pursuant to the Court's supervisory powers and Rule 11, "a court may direct a violating party to pay monetary sanctions to compensate the opposing party's attorneys' fees and other expenses incurred as a result of the misconduct."  *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 665 (S.D.N.Y. 1997).  Where sanctions are imposed, they may include "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  The entire defense in this action has been devoted to the issues of authenticity and uncovering Plaintiff's fabrication and spoliation.  All of the papers filed by Defendants and all of the discovery permitted to date has been on this issue.  Accordingly, all of the attorneys' fees and costs expended by the Defendants in this lawsuit directly result from Plaintiff's violations and are recoverable.  Granting of attorneys' fees and costs as sanctions is wholly appropriate and within the Court's discretion where a court dismisses an action for fabrication or spoliation of evidence.  *See, e.g., Shangold*, 275 Fed. App'x. at 73-74 (affirming dismissal of complaint and award of attorneys' fees as sanctions); *Cerruti 1881 S.A.*, 169 F.R.D. at 583-84 (entering judgment for plaintiff on merits, and imposing as sanction costs and attorneys' fees against defendant); *ComLab*, 2018 WL 4333987, at *9 (dismissing action with prejudice and attorney's fees).  Defendants are prepared to make a supplemental submission with an application for attorneys' fees and costs, should the Court permit or require.

23

## V.     REFERRAL TO THE UNITED STATES ATTORNEY'S OFFICE IS APPROPRIATE

The Court should exercise its inherent authority to refer this matter to the United States

Attorney's Office.  *See United States v. Cornielle*, 171 F.3d 748, 751 (2d Cir. 1999) (noting that

referral for criminal prosecution is warranted where an individual's falsehoods are "material to

the truth-seeking function" of the Court); *Ades v. 57th St. Laser Cosmetica, LLC*, No. 11 CIV.

8800 KNF, 2013 WL 2449185, at *13 (S.D.N.Y. June 6, 2013) ("Since the undisputed evidence

establishes that [defendant's] purported license was falsified and her deposition testimony was

false, the Court finds that it is appropriate to refer [defendant's] conduct to the [USAO] for

investigation and, if appropriate, prosecution for perjury.").  Indeed, the Court provided the

Landau Firm notice and warning of this inherent authority as early as July 17, 2018 when the

authenticity issues were initially raised:

> I have the ability -- if I find that people have lied or submitted
> fabricated documents, I potentially have the ability to refer the
> matter either to the grievance committee here at the Southern
> District of New York, if it involves the attorneys or the attorneys
> were complicit in it. I also have the ability to make criminal
> referrals to the United States Attorney's Office or other
> prosecutorial authorities.

July 17, 2018 Tr. at 8:17-25.  In light of the fraudulent and egregious conduct that has been

uncovered to date, Defendants submit that a referral to the United States Attorney's Office for

criminal investigation is warranted.

## VI.     AT MINIMUM, AN EVIDENTIARY HEARING SHOULD BE CONDUCTED

For all of the foregoing reasons, we submit that the current record entitles Defendants to

judgment on the papers.  At absolute minimum, however, Defendants are entitled to a hearing on

this Motion, which is routinely granted on much less robust showings of fabrication and

spoliation.  *See, e.g., Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998),

overruled on different grounds by *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395 (2d Cir. 2014).  At any such hearing, the Defendants intend to call Plaintiff as a witness so that he may be placed under oath and address the multitude of discrepancies surrounding the At-Issue Communications.  In addition, Defendants respectfully request that Plaintiff's prior counsel (Kevin Landau and Zach Landau) be ordered to appear at such a hearing, given Plaintiff's recent representations that his prior counsel is partly to blame for certain of these discrepancies.  *See* Stein Decl. Ex. N (claiming that the Landaus "misrepresented" to the Court that Plaintiff sent At-Issue Communications to the Landaus through Plaintiff Carrington's iPhone X); *Id.* (claiming that the Landaus advised Plaintiff to "delete" his website, which was associated with one of his email accounts).  Where, as here, a party puts his counsel's representation at issue, it is well-settled that related communications are no longer protected by the attorney-client relationship and are appropriate subjects of examination.  *See, e.g., Windsor Sec., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 517-18 (S.D.N.Y. 2017); *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 422 (S.D.N.Y. 1976).

## CONCLUSION

For all of the foregoing reasons,  Defendants respectfully request that the Court grant this Motion and dismiss Plaintiff's Amended Complaint *with* prejudice, order Plaintiff to reimburse Defendants their attorneys' fees and costs incurred in this lawsuit, and for any other relief that the Court deems appropriate.

Dated: New York, New York
        May 13, 2019

Respectfully submitted,


RUSS AUGUST & KABAT

By:     s/ Stanton L. Stein
        Stanton L. Stein
        Diana A. Sanders
        12424 Wilshire Boulevard, 12th Floor
        Los Angeles, California 90025
        Telephone: (310) 826-7474
        lstein@raklaw.com
        dsanders@raklaw.com

        *Attorneys for Defendants Brian Graden and
        Brian Graden Media, LLC*


SHEARMAN & STERLING LLP

By:     s/ Christopher LaVigne
        Stephen Fishbein
        Christopher LaVigne
        599 Lexington Avenue
        New York, New York 10022
        Telephone:  212-848-4424/4432
        sfishbein@shearman.com
        christopher.lavigne@shearman.com

        *Attorneys for Defendants
        Viacom Inc., Viacom International Inc., and
        Paramount Pictures Corporation*


LOEB & LOEB LLP

By:     s/ Wook Hwang
        Wook Hwang
        Sarah Schacter
        345 Park Avenue
        New York, New York 10154-1895
        Telephone:  (212) 407-4000
        whwang@loeb.com
        sschacter@loeb.com

        *Attorneys for Defendants Brad Grey, Brad
        Grey Estate, and Brad Alan Grey Trust*