K9AQcarC – Redacted

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ROVIER CARRINGTON,

4                   Plaintiff,

5        v.                              18 Civ. 4609 (KPF)
                                         Remote Teleconference
6

7   BRIAN GRADEN, BRIAN GRADEN
    MEDIA LLC, VIACOM INC., VIACOM
    INTERNATIONAL INC., PARAMOUNT
8   PICTURES CORPORATION, BRAD
    GREY, BRAD GREY ESTATE, BRAD
9   ALAN GREY TRUST,

10                  Defendants.

11  ------------------------------x
                                         New York, N.Y.
12                                       September 10, 2020
                                         3:00 p.m.
13
    Before:
14
                        HON. KATHERINE POLK FAILLA,
15
                                         District Judge
16
                            APPEARANCES
17
    RUSS AUGUST & KABAT
18       Attorneys for Defendants Graden
    BY:  STANTON L. STEIN
19       DIANA A. SANDERS

20

21  SHEARMAN & STERLING LLP
         Attorneys for Defendants Viacom
22  BY:  CHRISTOPHER L. LaVIGNE
         STEPHEN R. FISHBEIN
23       ZACK DEATON

24  LOEB & LOEB LLP
         Attorney for Defendants Grey
25  BY:  WOOK J. HWANG

K9AQcarC – Redacted

```
 1              (The Court and all parties appearing telephonically)

 2              DEPUTY CLERK:  Your Honor, this is in the matter of

 3    Carrington v. Graden.

 4              Counsel, please state your name for the record

 5    beginning with defendant Graden.

 6              MR. STEIN:  This is Stanton L. Stein and Diana Sanders

 7    of Russ August and Kabat on behalf of defendant Graden.

 8              THE COURT:  Thank you.

 9              On behalf of the gray defendants?  I'm sorry, I'm

10    hearing two people at once.  One of you speak, please.

11              MR. HWANG:  Your Honor, this is Wook Hwang, law firm

12    of Loeb & Loeb for the Brad Gray defendant.

13              THE COURT:  Thank you.  And, sir, is someone assisting

14    you this afternoon?

15              MR. HWANG:  It's just me on the line, your Honor.

16              THE COURT:  Thank you.

17              And representing the Viacom defendants.

18              MR. LaVIGNE:  Good afternoon, your Honor.  Chris

19    LaVigne, Stephen Fishbein and Zach Deaton on behalf of the

20    Viacom defendants.

21              THE COURT:  Thank you very much, and good afternoon to

22    you.  Let me note that I thank you for being available for this

23    conference and participating by phone and I wish to each of you

24    and your clients and your families safety and good health

25    during this pandemic.
```

K9AQcarC – Redacted

| | |
|---|---|
| 1 | Mr. LaVigne, I believe it is you and Mr. Fishbein |
| 2 | whose letter brings us to this conference.  I can tell you that |
| 3 | in anticipation of this conference, I received the letter and |
| 4 | the sealed exhibit that goes with it. |
| 5 | There was a second letter that I may have received |
| 6 | yesterday or looked at more this morning and a sealed exhibit |
| 7 | that went with that. |
| 8 | And then I received an email from Mr. Carrington |
| 9 | himself at about 1:15 this afternoon Eastern Daylight Time.  I |
| 10 | believe you were also copied on it.  Am I correct, sir? |
| 11 | MR. LaVIGNE:  That's correct, your Honor. |
| 12 | THE COURT:  And, Mr. LaVigne, of all the defense |
| 13 | counsel who are on this call, is there one of you who has been |
| 14 | deputized to take the lead in this proceeding? |
| 15 | MR. LaVIGNE:  I believe I have been so deputized, your |
| 16 | Honor. |
| 17 | THE COURT:  All right, sir, thank you. |
| 18 | I don't dispute, sir, your articulation of the law |
| 19 | regarding the factors that I must consider in determining |
| 20 | whether or not there is litigation that is vexatious and that |
| 21 | is sufficiently vexatious that I can enjoin it, but I do want |
| 22 | to make sure I understand how each of these factors appears or |
| 23 | is substantiated in this case. |
| 24 | For example, there is discussion about the parties' |
| 25 | history of litigation.  From my perspective, sir, it would |

K9AQcarC - Redacted

 1   seem -- I know of two litigations, one of which is really an
 2   order of protection, so I'm not sure that that necessarily cuts
 3   in your client's favor, but if there is additional litigation
 4   of which I should be aware, please let me know.
 5           MR. LaVIGNE:  Your Honor, those are the two key
 6   litigations, but I think there are a couple of points that are
 7   important.  The Second Circuit in *Eliahu* which is the 2019
 8   decision we attach in reference specifically says there that
 9   there's no strict numerosity requirement when it comes to this
10   factor.
11           THE COURT:  Yes.
12           MR. LaVIGNE:  In fact, in that instance, one of the
13   appellants only filed one prior litigation.  I think in the
14   court's words, I think it might have been Judge Chin, said
15   specifically a litigant should not be given a free pass just
16   because they haven't actually started to fully abuse the
17   system, if the overarching question, which is the likelihood
18   they're going do that again, is satisfied.
19           So here, you have Mr. Carrington, you know, we have
20   the body of work that's been demonstrated by the prior case
21   where at every step of the way he obstructed justice, he
22   fabricated evidence, falsified, spoliated evidence, and on top
23   of that he chose not to participate in the order of protection
24   or the temporary injunction that he sought against Mr. Graden
25   that coincides directly with this case.  The whole purpose of

K9AQcarC - Redacted

```
 1   that was to create a record as to why he did not appear on
 2   October 11, 2019 for our hearing, and to make it more personal
 3   for your Honor, his then lawyer, Greg Loomis, also called your
 4   Honor's court that day and falsely proclaimed he was returning
 5   a call.
 6             So, when we look at the overarching test that the
 7   Second Circuit has outlined in terms of a likelihood that
 8   someone is going to use this to abuse litigants and abuse the
 9   court process, I think this history is proof positive
10   Mr. Carrington is going to do that.  Even if it's only been
11   once, that one time has about 100 examples of obstructive
12   conduct that are proof positive he is going to use the court
13   and abuse our clients.
14             THE COURT:  Mr. LaVigne, just to push back on that a
15   little bit, my recollection is that I dismissed the case with
16   prejudice in or about, what was it, October of 2018, sir?
17             MR. LaVIGNE:  '19.
18             THE COURT:  '19.  Thank you, excuse me, sorry the
19   years are starting to blend together in this pandemic.  But
20   that said, it's been about ten months without hearing much from
21   Mr. Carrington, at least at my end.  I suppose the argument is
22   that he was pursuing his endeavors at the order of protection
23   level and that that having failed, he's now resumed the idea of
24   litigation.  But I'm just saying, it -- I am not sure that it
25   is as consistent or as repetitive or as constant as you're
```

K9AQcarC - Redacted

1    suggesting to me, and I'd like you to engage on that point.

2              MR. STEIN:  Your Honor, may I make one comment?  This

3    is Mr. Stein.  May I just make one comment?

4              THE COURT:  Yes, sir.

5              MR. STEIN:  Your Honor, he said in his email that he

6    has been pursuing this criminally with both the New York

7    District Attorney and the California District Attorney.  I

8    don't know about the New York District Attorney, but I know

9    that he had gone to the California District Attorney and the LA

10   Police Department and sought to have them initiate criminal

11   proceedings.  I supplied them with a ton of information.  He

12   supplied them with information.

13             I have been advised by the LAPD and the District

14   Attorney's Office in California that they will not take any

15   proceedings of any kind.  They don't find him to be credible.

16   So, I don't think there has been a lull.  I think he was simply

17   trying to do it through criminal proceedings.  Having failed in

18   criminal proceedings, he alleges that the DA's office recommend

19   that he use civil proceedings.

20             So I don't think there has been a lull at all, your

21   Honor.  I think it's been constant, and that the TRO came very

22   soon after -- the TRO came as your Honor was having a hearing

23   to determine whether or not to dismiss the case.  So he didn't

24   waste any time at all.

25             THE COURT:  Mr. Stein, in your estimation, do you

K9AQcarC - Redacted

1    believe -- I mean, it may well be the case that no district
2    attorney's office recommend that he bring a civil action, but
3    are you going to be arguing to me that that is their very nice
4    way of letting him down and not bringing criminal proceedings?
5          MR. STEIN:  I think it's clear that they say there is
6    no basis for criminal proceedings.  You want to do something,
7    you're on your own, and he interprets that to be "I should be
8    bringing civil actions."
9          THE COURT:  I see.  Mr. LaVigne, I will return to you.
10   Thank you, sir, and I will let you perhaps follow on what
11   Mr. Stein has just been advising me.
12         MR. LaVIGNE:  Yes.  I think, number one, that's a
13   relevant data point that I do not think there's been a lull.
14   Again, if you look at the state of play right now, a week ago
15   we got a letter from Mr. Sobel who is now representing
16   Mr. Carrington.  And it refers to you know imminent litigation
17   proceedings that would be brought if we do not accept a
18   settlement demand in the amount of $350 million.
19         To put some finer points on that, you know, the
20   allegations in there directly mirror the subject matter of the
21   litigation that your Honor considered and dismissed with
22   prejudice, and in the exchange that we attached today to your
23   Honor, we made crystal clear to Mr. Sobel that there was this
24   conference happening today and that he should attend.  He
25   indicated he was not going to attend because he doesn't

K9AQcarC - Redacted

1    represent Carrington in any prior or present suit.  We then

2    again spelled out to him that the whole purpose of this

3    conference is to talk about enjoining his client from seeking

4    any litigation.

5           And in response, we got the second letter which we

6    provided to the Court.  In that letter his response is

7    basically, you know, a judge in the Southern District of New

8    York can't stop us, and we're going to go full steam ahead, and

9    that's been echoed by Mr. Carrington.

10          So, the history of litigation, that's a relevant

11   factor because the core issue is, is a litigant going to use

12   prospectively litigation to abuse the court system and abuse

13   litigants.  And like *Eliahu* said, one time is enough.  This has

14   been many times.  And if you look at the state of play right

15   now, from Carrington's perspective, he does not care what

16   happens.  He's undeterred.  And he's going to pursue

17   litigation.  And it's baseless.

18          THE COURT:  Well, there is a difference, I think you

19   have to acknowledge that there is a difference in the lawsuit

20   that I dismissed with prejudice and the lawsuit that's been

21   threatened more recently.  To be clear, there is a significant

22   amount of overlap, but I think you would concede that there are

23   a lot of allegations about stuff that happened after the events

24   at issue in his complaint before me that he believes warrants

25   redress in the judicial system.

K9AQcarC - Redacted

1      There are some parts of it that I, of course, have to

2 take issue with.  I wasn't bribed, for example, and I'm not

3 colluding with any of you also, for example, but nonetheless,

4 there are things that are taking place and there are

5 allegations that are being made of conduct as recently as a

6 couple of weeks ago that I think do not neatly fit into the

7 lawsuit of mine that was dismissed with prejudice.

8      MR. LaVIGNE:  Your Honor, I think there is not an

9 exact one-to-one overlap with every single allegation, but at

10 bottom, if you read the letter we received from Mr. Sobel, the

11 20 pages, I mean it lines up almost directly with the

12 allegations in the amended complaint.  It's the same people,

13 places, locations, even the same twists of phrase like, "I have

14 you by the balls."

15      I can go through this, but essentially the timeframe

16 is December 2010, and it talks about him being brought on to

17 the Paramount lot, being introduced to various characters,

18 certain alleged assaults that took place relating to Mr. Grey

19 and others and then this concept of blacklisting and

20 misappropriation.  These are recycled allegations that are

21 regurgitated, and there doesn't need to be a one-to-one

22 overlap.

23      Under the doctrine of vexatious litigation, courts

24 have consistently imposed injunctions to apply to any acts

25 arising out of or relating to a prior litigation.  In some

K9AQcarC – Redacted

1    instances, it's been a full-stop injunction against any

2    litigation.  I think the key issue is it has to be narrowly

3    tailored, and here we've narrowly tailored that by two things:

4    Number one, having it be relating or arising out of the subject

5    matter here.  And, number two, he just needs to get permission

6    from your Honor before instituting new litigation.

7         So, I think it's not one-to-one per se, but I think

8    for the most part if you look at this and review this letter,

9    basically every single aspect of the complaint is subsumed in

10   this letter, and at its core, the big picture of allegations:

11   Blacklisting, misappropriation, sexual assault, that was the

12   crux of the amended complaint that your Honor dismissed with

13   prejudice.

14         THE COURT:  I understand what you're saying, sir, but

15   I'm looking at later cases.  In the Exhibit 3 to your initial

16   letter, there's reference to the hearings before me, and

17   there's a suggestion in there – I'm neither agreeing nor

18   disagreeing with it – that in some way the Landau firm was

19   compromised, that in some way problems emerged because

20   information did not go directly to FTI.  I do, by the way, have

21   an answer to that and understand it.  And that there's

22   misconduct largely by Mr. Stein – and I'm certainly not

23   agreeing with it; I'm just noting it's referenced here – that

24   seems to extend beyond the claims that are made in the case

25   before me.

K9AQcarC - Redacted

1          MR. LaVIGNE:  Well, let me address that, your Honor.

2     I mean, that's right, all these do postdate the allegations in

3     the complaint, and we are seeking -- our injunction would be

4     arising out of or relating to, but the bottom line is all of

5     these allegations were put before your Honor by Mr. Carrington.

6          If you recall, we filed our motion for sanctions, I

7     believe, in May 2019.  Mr. Carrington did file a response, a

8     very long response, and it included these allegations.  And

9     your Honor dismissed any suggestion of misconduct by counsel in

10    a separate order and reiterated that at a finding on

11    October 11, 2019.

12         So, to the extent these are not addressed in the

13    complaint because they postdated it, they were part of this

14    litigation and have already been considered and rejected by

15    your Honor.

16         THE COURT:  So, because I found that there was no

17    misconduct with respect to FTI, for instance, you're saying

18    that he cannot now bring a lawsuit even if the nature of this

19    lawsuit is that there is information of which I was unaware

20    that actually represented a fraud on me.  Again, I'm not saying

21    I agree with it; I'm saying that's what I'm perceiving from

22    Mr. Sobel's submission.

23         MR. LaVIGNE:  Well, first off, we're not seeking an

24    injunction that would prevent him from doing anything.  The

25    injunction would require that he seek leave of the court and

K9AQcarC - Redacted

1   have to apply to the court to get permission to file.

2          Obviously, if there is something that happens and is

3   totally disconnected from this case, then I think he could

4   pursue a lawsuit, but again, relating to or arising out of,

5   that would cover the conduct by counsel in this case, and

6   especially conduct that your Honor already considered and

7   rejected.  That would be an issue.

8          But the goal here is to avoid us having to get dragged

9   into a court and educate a judge in a different forum about

10  everything that your Honor has considered and resolved.  I

11  think all of the instances here about counsel's purported

12  misconduct, including with respect to Mr. Stein, that was

13  raised by Mr. Carrington earlier in the context of his various

14  letters.

15         THE COURT:  Well, wait.  What about -- I'm looking at

16  page 20 of Mr. Sobel's letter of August 27.  There is a

17  reference to conduct taking place on August 14 of 2019.  I

18  obviously have nothing to do -- at that point the case before

19  me was dismissed.  And looking also at the sealed second

20  letter, there are things about what happened or did not happen

21  in February of 2020 that Mr. Stein is alleged to have done that

22  I don't think are fairly subsumed by the litigation before me,

23  but I will listen to you on that.

24         MR. LaVIGNE:  Well, the allegations in February of

25  2020 though, I mean, I think they have to do with statements

K9AQcarC – Redacted

1   that were made in the context of dismissing a TRO in Los

2   Angeles Superior Court, and Mr. Stein could speak to these

3   because they address him specifically, but I don't think he's

4   making an allegation that this would be the basis for a

5   separate lawsuit.  As I understand it, that case is ongoing and

6   the hearing for actual sanctions is going to be taking place

7   soon, but maybe Mr. Stein is best equipped to respond to those.

8           In terms of the issues relating to October 2019, my

9   recollection, your Honor, is at some point Mr. Carrington did

10   make a submission touching on some of these issues in terms of

11   why he could not appear.

12           THE COURT:  Yes.  Well, he made -- I mean, there were

13   several submissions because I believe the first went to issues

14   with his health and his ability to travel by plane, which is

15   why we adjourned the matter, and then there were separate

16   issues suggesting that he did not come to the conference

17   because he was afraid of something happening to him.  So I

18   think those were both species of arguments as to why he could

19   not attend at various times.

20           Mr. Stein, you will not be surprised to know or to

21   learn that I find these some very disturbing allegations.  I'm

22   certainly not saying they're true.  This is the first time I'm

23   hearing about them, but I don't quite understand what to make

24   of them, and I guess what I also don't understand is that there

25   is some suggestion in the materials I received preliminary to

K9AQcarC - Redacted

1    this conference that the reason why the order -- the order of

2    protection was going to be withdrawn all along, but then I

3    think there's a separate suggestion that the order of

4    protection was withdrawn because of conduct or misconduct by

5    Mr. Carrington.  So perhaps you could enlighten me on what

6    happened in California.

7              MR. STEIN:  Yes.  The same thing that happened in your

8    court, your Honor.  Let me walk you through it.

9              First of all, let me just say that many of the

10   allegations against me were allegations that were made in your

11   courtroom.  For instance, ███████████████████████████████

12   ███████████████████████████████████████████████████

13   ██████████████████████████████████████ I represented

14   the Court and had an email to establish that I didn't even know

15   Mr. Graden at the time that these alleged things occurred.  I

16   had the referral to me that came in at the time that I started

17   referencing Mr. Graden years after I allegedly had done these

18   things in cohorts with Mr. Graden.

19             But what happened in California is pretty clear.  In

20   California, you can obtain an ex-parte temporary restraining

21   order if you claim that someone is dangerous to you, so you

22   don't have to give them notice, and that's what he did.  He

23   went in, he obtained through Greg Loomis, the same lawyer that

24   was involved in New York, on the very day that Loomis and he

25   were ordered by this court to appear, on that very same day he

K9AQcarC - Redacted

1  filed an ex-parte for a restraining order against Mr. Graden.

2  And the basis of the restraining order was that Mr. Graden had

3  threatened him that if he goes back to the hearing, that

4  Mr. Graden will harm him.

5          So, after you get an ex-parte, the court sets an OSC

6  for a hearing on the restraining order to continue.  And on

7  November 1, 2019 we filed an opposition.  We stated that Graden

8  and the other declarants had no contact with him, and we filed

9  a declaration to that effect.

10         We reviewed Graden's phone records, both his cell and

11  his office phone, and there were no outgoing calls to

12  Mr. Carrington.  There is no way Graden could have modified the

13  calls.  Counsel retrieved the logs directly from AT&T and

14  obtained from the office call records straight from building.

15  My office obtained additional declarations from work

16  professionals who attested to being with Graden in meetings at

17  the time of the alleged calls.

18         And then we hired a cellular forensic expert who

19  examined both sets of records and determined that calls were

20  not made by Graden, and that they were instead number spoofed

21  by Mr. Carrington.  Now, spoofing is the ability of a calling

22  party to change the phone number that would appear on the

23  caller party ID.  It's done by using an app.  You enter the

24  number of the person you wish to call and you enter the number

25  you wish to be displayed on the recipient's caller ID, so the

K9AQcarC - Redacted

recipient's caller ID shows the incoming calls, but it won't

show on the dialer's log because that phone number didn't

actually place the call.

        So, he put false records into the courtroom alleging

that on those dates he did not come back for his hearing in

your court because he was threatened by Mr. Graden, and now

apparently by me as well, although at the time he said only

Mr. Graden.

        Following the forensic analysis and the proof of

documents, Greg Loomis stopped communicating, and on

February 10, 2020, I appeared at the TRO hearing.  Neither

Loomis nor --

        THE COURT:  Sir, before you get to that point, I'm

back in November of 2019.  You mentioned the opposition being

filed on the 1st of November.  Mr. Sobel in speaking of an

episode on the 5th of November of 2019, I understand, did

something happen?  Was there a court proceeding on that date?

What happened?

        MR. STEIN:  There was a court proceeding on that date.

What happened was the judge in the first hearing asked us to

exchange documents because Loomis brought up a photocopy of

Carrington's phone records showing that these calls were made

by Graden.  I had Graden's phone records and showed that the

calls were not made.  So, the court said exchange these

documents and figure out what happened.

K9AQcarC – Redacted

1          That is when we got the expert involved, and the

2     expert looked at the records and said this is exactly how he

3     did it.  And it's easy to change the receiving party's phone

4     records to spoof it, but it is impossible to change the calling

5     party's records.

6          So at that point, Loomis realized that he didn't have

7     a case.  He then decided what he should do is dismiss his case

8     without prejudice because then he wouldn't have liability

9     because there wouldn't have been a decision against him

10    dismissing it.

11         THE COURT:  One moment, sir.  Sir.  Sir, one moment,

12    please.  When you say, "He decided to dismiss the case without

13    prejudice," is that he, Mr. Loomis, or he, Mr. Carrington?

14         MR. STEIN:  He, Mr. Loomis.

15         THE COURT:  Thank you very much.

16         MR. STEIN:  Decided to dismiss the case without

17    prejudice.

18         THE COURT:  OK.  And he told you that, sir?

19         MR. STEIN:  He said that to the Court.

20         THE COURT:  OK.  Thank you.

21         MR. STEIN:  He said that to the Court.

22         And I said to the court I do not want the case

23    dismissed without prejudice because if you dismiss it without

24    prejudice, he is just going to refile another case or a

25    different case.  He has fabricated documents before, and I have

K9AQcarC - Redacted

1   proved to you now by expert testimony and declarations that he

2   is fabricating evidence again.  I want a dismissal with

3   prejudice of this case, and I want to be able to seek

4   attorneys' fees against both Mr. Carrington and Mr. Loomis for

5   putting false evidence into the courts, and the court has set a

6   hearing on September 25 for me to do that.

7          THE COURT:  September 25, sir?

8          MR. STEIN:  Yes.

9          THE COURT:  All right.  Sir, this was done at a

10  hearing on what date?  When was that schedule set?  Also in

11  February of 2020?  I mean, we've gone seven months here?

12         MR. STEIN:  I have to look at the date.

13         Diana, do you have the date.

14         MS. SANDERS:  Yes.  This is Diana Sanders, your Honor.

15  That was done on February 10 of 2020.  That was a hearing on

16  the TRO.

17         THE COURT:  Thank you.  I was just asking whether it

18  had been in fact seven months, and it sounds like it has been.

19         MS. SANDERS:  It has been, your Honor.  Because of

20  COVID, the court on its own continued the hearing.

21         THE COURT:  Thank you.

22         Please continue, Mr. Stein.

23         MR. STEIN:  Yes.  And so that is the state of the

24  situation in California on the TRO.  It was dismissed with

25  prejudice, and the court is going to consider sanctions.

K9AQcarC – Redacted

```
1          THE COURT:  OK.

2          MR. STEIN:  The allegations about what happened during

3    the court proceeding are absolutely 100 percent false.  ████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10        ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14        THE COURT:  ████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ██████

20        MR. STEIN:  ████

21        THE COURT:  ██████

22        MR. STEIN:  ████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ██████

25        ████████████████████████████████████████████████████
```

K9AQcarC – Redacted

1        ███████.   I was the ACLU public interest lawyer of the year.   I

2   started the largest public interest law firm in the country,

3   public counsel 40 years ago.   I have brought numerous *pro bono*

4   projects on behalf of African Americans and Hispanic and other

5   minority groups, ███████████████████████████████

6   ███████████████████████████████████████

7   ████████████████████████████████████████████

8   ████████████████████████████████████████████

9   ██████████████████████████████████

10       The damage is so -- you know, all he has to do is file

11   the complaint out here, and it will be picked up by the media.

12   It will be in the Hollywood Reporter or Variety or all over the

13   place, because it's been a public record.   He filed it and all

14   they're doing is reporting what's in a plea.   And that is why

15   we need injunctive relief.   We need to prevent the whole attack

16   on me, your Honor, is based on the fact that I represented a

17   client in your courtroom, and he is going to continue.   He

18   tried to do it through the criminal system; it didn't work.

19   Now he's going to try to continue to bring it in California.

20   He tried to do it through a temporary restraining order.   If

21   any of this stuff was true, he could have fought the

22   restraining order, the dismissal of the restraining order.

23   They didn't fight the dismissal of the restraining order.   They

24   tried to, and they lost because the court saw that he

25   fabricated evidence which he submitted to the court.   That's

K9AQcarC - Redacted

1    why it was dismissed with prejudice, just like your Honor

2    dismissed his case with prejudice for having lied and

3    fabricated evidence and spoliated evidence.

4              THE COURT:  Mr. Stein, is there a transcript of any of

5    the proceedings in Los Angeles County Superior Court?

6              MR. STEIN:  I don't think there was a transcript of

7    the hearing that occurred.  I've looked for it, but I don't

8    think there is.  It doesn't matter because anything that was

9    said in that proceeding would be protected by the litigation

10   privilege, number one.  And, number two, I have a declaration

11   from my associate as to what happened in my own declaration.

12   And I could talk to the court.  I could go to Judge Spear

13   because I'm sure she will remember that no █████████████

14   █████████████████████████████

15             THE COURT:  Well, there are terms that are supposedly

16   used in arguments made to the court, and there are references

17   to ████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████

21   ██████████████████████

22             But I appreciate as well, sir, what you're saying,

23   which is that you have an associate who has sworn up and down

24   that this stuff never happened, but I'm just -- I'm sort of

25   struck by -- and perhaps it's because I don't lie in my

K9AQcarC - Redacted

1    judicial submissions or otherwise, but I guess I'm surprised

2    just -- you're saying to me that this entire demand for

3    $350 million is creative hoopla.

4            MR. STEIN:  Absolutely.  Absolutely.  I mean, the

5    allegations are now that ████████████████████████████

6    ████████████████████████████████████████████████████

7    ██████As he is proven wrong on each thing, he then shifts

8    slightly his story to allege that ████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ██████████████████████████████There is no basis --

13           THE COURT:  Mr. LaVigne, I will let you speak in a

14   moment.  Let me let Mr. Stein finish.  Thank you.

15           Go ahead, Mr. Stein.

16           MR. STEIN:  There is no basis for the claims here.

17   They're all false.  They're fake.  Now, apparently, not only

18   did Mr. Graden threaten him, but ████████████████████████

19   ██████████████████████████████████I think every counsel on

20   the line will tell you we were so hoping that he would show up

21   at that hearing.  I mean, the things he's accusing people of

22   are outrageous, and they're harmful and he has no compunction

23   about do that, and he has to be stopped.  He has to be stopped.

24           I wish the U.S. Attorney would take this up.  We're

25   going to ask the Court subsequently to reconsider referring, I

K9AQcarC - Redacted

 1    think, but, you know, he can't continue to say the same things

 2    over and over again and then change them slightly and bring

 3    them in court after court after court.  He is a vexatious

 4    litigant.  He's without morals.

 5          And I don't know anything about Mr. Sobel.  I don't

 6    know why he is involved in this or if he really is involved in

 7    this, but I have never seen anything like this in my 40 years

 8    of practice, and I have been involved in a lot of litigation.

 9          THE COURT:  All right, sir.  Again, I will go to

10    Mr. LaVigne in a moment, but may I imagine that if I found a

11    desire, an inkling to call Judge Spear, you would oppose?

12          MR. STEIN:  I would not oppose it.

13          THE COURT:  Thank you.

14          MR. STEIN:  I have no problem at all.  No problem at

15    all.

16          THE COURT:  OK.

17          MR. STEIN:  And what he said, he says that ██████

18    ████████████████████████████████████████████████████

19    ██████████████████████████████████████████████████████

20    ██████████████████████████████████████████████████████

21    ██████████████████████████████████████████████████████

22    ██████████████████████████████████████████████████████

23    ██████████████████████████████████████████████

24    ██████████████████████████████████████████████

25    ██████████████████████████████████████████████

K9AQcarC - Redacted

1    ██████████████████ and blah, blah, blah, and that that was

2    evidence of his lack of truthfulness; not that he did have.  I

3    was not trying to say he did have sex with those people.  I

4    don't think he ever had sex with any of them, and that's what

5    we point out.

6          THE COURT:  Mr. Stein, is it in fact the case that

7    Judge Spear granted Mr. Carrington's request to depose you?

8          MR. STEIN:  No, ma'am.

9          THE COURT:  OK.

10          MR. STEIN:  There was no -- you can look at the court

11    records.  It would reflect it.  There was never an Order that I

12    should be deposed or an Order that my client should be deposed.

13          There was an informal exchange of documents because I

14    had my client's phone records, and for the first time at the

15    hearing Mr. Loomis showed up at the first hearing and had his

16    client's phone records, and the judge said, "Counsel, there's

17    something wrong here.  We have two sets of records and they're

18    inconsistent.  Somebody is lying.  So, want you two to exchange

19    them, and then I want you to figure out how it happened."

20          And that's what we did.  I did not understand the

21    concept of spoofing, and I went to a forensic expert, and they

22    explained to me how he could do that, and that's what he did.

23    And that's what he's going to do with any other records.  He's

24    going to take his phone records and make it look like somebody

25    called him when they didn't.

K9AQcarC - Redacted

1          THE COURT:  I see.

2          Mr. Loomis did not appear at the February 10, 2020

3    proceeding?

4          MR. STEIN:  No.

5          THE COURT:  OK.  No one appeared.

6          MR. STEIN:  I think he appeared -- Diana, did he

7    appear by phone or no?

8          MS. SANDERS:  Your Honor, he did not appear.  The

9    court indicated that it received some notice from him about

10   prejudice and there was a -- (inaudible).

11         (Reporter inquires)

12         THE COURT:  I'm not hearing it either.

13         Ms. Sanders, please repeat yourself.

14         MS. SANDERS:  Sorry about that.  Mr. Loomis did not

15   appear at the hearing, but the court indicated that he had

16   advised the court, I'm assuming, by a prior phone call or a

17   letter sent or something, your Honor, that he intended to

18   dismiss the case without prejudice, and then the court

19   questioned him on that issue to which Mr. Stein then argued

20   that the case should be dismissed instead with prejudice.

21         THE COURT:  Thank you.  OK.

22         Mr. LaVigne, I appreciate your patience.  I will hear

23   from you now.

24         MR. LaVIGNE:  Your Honor, I just wanted to follow up

25   on something Mr. Stein said about the history of

K9AQcarC - Redacted

1   Mr. Carrington's actions and how it constantly changes, and

2   that was focused on on Mr. Stein's conduct.  But even looking

3   at this case and your Honor found this and is this outlined in

4   detail in the transcript on October 11, but just to bring

5   everybody back to this, there was that Trendsetter account that

6   Mr. Carrington relied upon for these blacklisting claims and

7   the antitrust claims.  If you recall, your Honor, he initially

8   represented that account had been deactivated for years, so FTI

9   was never given access to it.

10         And then things shifted and it turned to a potential

11  hack, which is why there were no more email accounts and he had

12  to double-down and basically say no, no, no, no, my attorneys

13  misspoke.  Then we got Google responses back, and it turned out

14  that the account had been deleted the day after the amended

15  complaint, and now what he's saying in this letter is that

16  Mr. Graden personally deleted all of those in 2015.

17         And there is just this constantly evolving story and

18  tale, which I think your Honor really focused on on the

19  spoliation aspect because by deleting all of these accounts, he

20  can't put the genie back in the bottle.  This is a scenario

21  where your Honor even said it foreclosed so many avenues of

22  information to the defendants to use in any type of litigation.

23  That's a core reason why this was dismissed with prejudice.

24         If you look at his actions, if he really wanted to

25  engage with this, he could have appeared at the October 11

K9AQcarC - Redacted

1    hearing.  He could have actually tried to contest the sanctions

2    award, and he didn't.  He's not participating.  As Mr. Stein

3    said, our concern here is this is a stunt where he'll file an

4    action, force us to respond, and that's the key reason it's

5    consistent with the other cases that have been found to be

6    vexatious litigants in terms of why we need this relief.  And I

7    just wanted to echo that point that Mr. Stein made.

8                THE COURT:  All right.  Thank you.

9                Mr. Hwang, you have been also very, very patient.  Is

10   there something you want to add?

11               MR. HWANG:  Thank you, your Honor.  I think

12   Mr. LaVigne and Mr. Stein have addressed the issues capably.

13   The only thing I would emphasize, Mr. Carrington just a quick,

14   you know, looking at this from a 30,000-foot view, he's been

15   deemed by this court to have perpetrated a fraud on the

16   judicial system.  And in your Honor's words of the October 11

17   hearing, this was deemed to be an unconscionable scheme

18   calculated to interfere with the judicial system's ability and

19   partially to adjudicate the action.  So, as far as the

20   vexatious litigant designation goes, this is the very

21   definition of bad faith and abuse of the judicial process.

22               As Mr. LaVigne notes, numerosity is not required in

23   and of itself to impose restraints against a vexatious

24   litigant, and other than potentially that factor, it's

25   difficult to imagine really a case of a vexatious litigant more

K9AQcarC - Redacted

1   than an individual who has been deemed already to have

2   defrauded the judicial system.

3          So, other than that point, unless there's something

4   else your Honor would like me to address specifically, I have

5   nothing further to add.

6          THE COURT:  Thank you.

7          Mr. LaVigne, I just want to make sure I understand the

8   proposal of all defendants, and that is what you're asking me

9   to do is to enjoin Mr. Carrington from commencing in any state

10  or federal court any new action arising from or related to the

11  same subject matter addressed in the case before me without

12  express prior leave.  You're basically asking me

13  to be his -- his what, the gatekeeper for future litigation?

14         MR. LaVIGNE:  Yes, your Honor.  And I think that's

15  consistent with what the Second Circuit has said in the *Eliahu*

16  case.  I think this case is more egregious than those, given

17  the pattern of practice that Mr. Carrington has shown and

18  exhibited.  But he has foregone his right to pursue new actions

19  given the history and the prospect of what's to come.

20         And courts have imposed more egregious injunctions,

21  like Judge Sweet, in one of the cases we cited, I believe

22  *Fitzgerald* where there was an outright prohibition on

23  commencing any action without prior leave of the court.  But I

24  think the Second Circuit has been very clear, this is

25  consistent with court supervisory powers.  It's an appropriate

K9AQcarC – Redacted

```
1    sanction.  They've affirmed them.  They have this five-factor
2    test, and he meets it.
3            We're not saying he can never bring a lawsuit, but
4    there has to be some type of filter.  I mean, Mr. Carrington is
5    sending emails to the court thumbing his nose at this entire
6    proceeding.  It's consistent with his approach to this
7    litigation where he can shoot first, ask questions later, and
8    then not even appear, and then basically hide behind the cloak
9    of an email account on the West Coast and hope nobody ever
10   comes after him and calls him out.  He's lost the right.  He
11   has lost the right to use the court as his playground and to
12   target our clients.
13           And to put it in perspective, $850,000 was I believe
14   the total aggregate number submitted in our fee application,
15   and that was before we put together the actual application
16   itself.  And the Court used the terms *frolic and detour* based
17   on certain of Mr. Carrington's actions.  All that amount is
18   attributable to him in trying to untangle this mess and web of
19   lies.  I have no doubt in my mind from his prior actions that
20   this relief his necessary.
21           And the hope is that there is judicial oversight over
22   this, and if we get a temporary restraining order and a
23   preliminary injunction, we will send it to Mr. Carrington,
24   we'll send it to Mr. Sobel.  I hope that will be a deterrent
25   because nothing has deterred him to date.  Not the fact that
```

K9AQcarC – Redacted

1    his case was dismissed with prejudice, not the fact that he was

2    have found to have fabricated and lied, not the prospect of

3    referral to the U.S. Attorney's Office, and not the prospect of

4    having to be on the hook for a judgment of $850,000.

5         So, this absolutely is a case where the only recourse,

6    the only prophylactic measure is going to have judicial

7    oversight, otherwise we're going to be chasing him around and

8    having to educate a brand new judge about what happened, and

9    that's just not fair.  That's why this doctrine was put in

10   place.

11        THE COURT:  Mr. LaVigne, I'm going to ask you to pause

12   for a moment, please.  As you were speaking, I heard an

13   indication that someone had either entered or exited this call,

14   and that certainly is fine, but I wanted to find out who it

15   was.

16        Yes.  May I ask who is speaking?

17        MR. STEIN:  Yes, this is Mr. Stein.  I accidentally

18   disconnected and reconnected.  I apologize.  My bad.

19        THE COURT:  No, no, no.  No reason to apologize.  This

20   always happens so many times, but I appreciate knowing.  I just

21   wanted to make sure if there was someone around who wanted to

22   speak on behalf of Mr. Carrington, because, of course, we have

23   invited him to participate, and he has received, through a

24   gentleman purporting to be his counsel, notice of this

25   proceeding.  And he obviously knows enough and knows how to get

K9AQcarC - Redacted

1    in touch with me because he sent an email directly to chambers

2    today knowing about this conference.  So had he wanted to

3    participate, he knew full well how to do so.

4              Mr. LaVigne, I think I've asked all of the questions I

5    wanted to ask, and I want to think very carefully about the

6    relief you're asking me to impose.  I don't want to cut you

7    off.  I want to make sure you've said your piece before I turn

8    to your colleagues and let you all go.

9              MR. LaVIGNE:  The only other couple of points, your

10   Honor, if you look at the five factors, another issue is the

11   motive; that's a critical one.  Here, the motive is harassment,

12   trying to get a potential nuisance settlement.  I don't think

13   anybody can dispute that.

14             Mr. Sobel and Mr. Carrington are well aware and have

15   received a prior transcript.  They're aware of the fabrication

16   and even if a perfunctory look at this letter shows the

17   overlap, and no lawyer in their right mind could think this

18   case has legs to stand on.  It's pure harassment.  They're

19   trying to use this court and the court system as a playground,

20   causing needless expense or putting an undue burden on the

21   court and the expense.

22             Again, $850,000 we spent defending this case, the idea

23   of having to go to a brand new court and educate them, that's

24   also a waste of that court's resource.  That weight in favor.

25   Are there less drastic measures?  Absolutely, 100 percent not.

K9AQcarC - Redacted

```
 1    I laid that out before.  I have nothing else to say.  But this
 2    man is not deterred.  The only thing that is going to deter
 3    him, short of a referral, short of a potential other proceeding
 4    involving criminal punitive measures is an injunction like
 5    this, and, hopefully, it will really deter any lawyer.
 6          He is represented by counsel now, which is another
 7    factor.  The idea that pro se litigants can be given a long
 8    leash doesn't apply here because he's acting through counsel.
 9          So, for all those reasons, we think collectively, an
10    injunction should be entered.  Our request is, if the Court
11    does want to think about it, we would ask that some form of
12    temporary oral order be put in place pending the issuance of a
13    final decision or any other information the court may want.
14    But that is our request, your Honor.
15          THE COURT:  Thank you.  I am not prepared to do
16    anything on the record today, but I suspect if I called you
17    with very little notice, you would get on the line with me so I
18    could give an oral decision as appropriate.
19          Mr. Stein, is there anything else you wanted to say,
20    sir, before I ended this conference?
21          MR. STEIN:  Just, your Honor, that sanctions against
22    Mr. Carrington are worthless because he doesn't have anything.
23    We're never going to get back all the money we spent in your
24    courtroom.  I'm never going to get back all the money my
25    clients spent on an absolutely fraudulent attempt to obtain a
```

K9AQcarC - Redacted

1    temporary restraining order and all the money we spent

2    defending ourselves with the LAPD and the district attorney's

3    office against false claims.

4          So, the only thing that will stop him is either an

5    injunction or a criminal proceeding.  Monetary sanctions are

6    fine, but it's not going to do anything to dissuade this man

7    because he knows he can never pay them anyway.  He'll change

8    his name yet again.

9          And I would implore the Court, if you believe there

10   are some things that are beyond what you've decided, at least

11   grant an injunction, allow him to come in and then if there are

12   fair things that you feel you can or if don't feel comfortable

13   enjoining, that's fine.  But he's alleged that he's going to

14   bring an action alleging the exact same things that he alleged

15   in the prior proceedings against counsel that have already been

16   found to have acted appropriately in front of you, and let's at

17   least make sure that he can't do that.

18         If there are other allegations that he wants to make

19   beyond which you think you have control over, that's fine, but

20   at least let's stop him from dragging everybody into court over

21   things that you've already ruled upon.

22         THE COURT:  Thank you, sir.

23         Mr. Hwang, anything else?

24         MR. HWANG:  I have nothing else to add, your Honor.

25         THE COURT:  All right.  I need to think very seriously

K9AQcarC – Redacted

1    about what you've said to me.

2           To the best of my knowledge, there has been no

3    additional information that's come in during while this hearing

4    has been going on.  You'll hear from me soon.  Thank you very

5    much.  We are adjourned.  I am expecting – but I also know the

6    crowd with whom I am dealing – that someone will get the

7    transcript of this conference.  Please do so.  I will let you

8    figure out who offline.  Thank you.  Stay well.

9           (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25