G. SCOTT SOBEL, Esq., CA Bar No. 124818
LAW OFFICE OF G. SCOTT SOBEL
1180 S. Beverly Drive, Suite 610
Los Angeles, CA 90035-1158
Tel: (310) 422-7067; Fax: (888) 863-5630
GScottSobel@gmail.com

*In Pro Per*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROVIER CARRINGTON,<br><br><br>          Plaintiff,<br><br><br>                    v.<br><br><br>BRIAN GRADEN et al.,<br><br><br>          Defendants. | Case No. 1:18-cv-04609-KPF<br><br>Hon. Katherine Polk Failla<br><br><br>**NON-PARTY G. SCOTT SOBEL'S RESPONSE TO OSC RE: CONTEMPT**<br><br><br>**Date:**<br>**Time:**<br>**Room:** |

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................. 3

II.  ARGUMENT .................................................... 3

   A.  Legal Standard To Disregard Void Injunction ................................. 3

   B.  Sobel Must Not Be Held In Contempt Because Judge Failla Lacked Jurisdiction to Order Injunction ................................................. 4

      1.  Challenge to Subject Matter Jurisdiction is Never Forfeited or Waived ........... 4

      2.  Judge Failla Acted in the Complete Absence of Jurisdiction ........................ 4

         a)  Judge Failla Cannot Meet the First Prong of the Stump Test. ..................... 5

         b)  Judge Failla Cannot Meet the Second Prong Either ..................................... 7

         c)  Conclusion to Complete Absence of Jurisdiction ........................................ 8

      3.  The Orders of Dismissal and of Injunction Were Issued in a Manner Inconsistent With Due Process ......................................................... 9

         a)  Legal Standard to Show Due Process Violation ........................................... 9

         b)  Neither Defendants Nor Judge Failla Cite Any Legal Authority Authorizing Discovery ........................................................... 9

         c)  Carrington Was Never Served Notice of Any Legal Proceeding................ 10

         d)  Conclusion to Due Process ....................................................... 14

   C.  Even Assuming Proper Jurisdiction, Sobel Must Not Be Held In Contempt Because Consideration of the Merits Is An Essential Element of Any Constitutional Vexatious Litigant Injunction ................................. 14

      1.  *Safir* Stands for the Proposition that the Court Must Consider the Merits ....... 14

      2.  *Eliahu* Stands for the Proposition that the Court Must Consider the Merits .... 15

      3.  *Iwachiw* Stands for the Proposition that the Court Must Consider the Merits . 16

      4.  Conclusion to the Unconstitutionality of the Injunction................................. 17

   D.  Regardless of Anything Else, This Court Lacks Jurisdiction to Make Any Order In The Central District of California ................................. 17

   E.  Regardless of Anything Else, Judge Failla Is Disqualified and Must Recuse 18

      1.  Legal Standard to Disqualify ....................................................... 18

      2.  Judge Failla's Impartiality Must Reasonably Be Questioned.......................... 18

      3.  Conclusion to Disqualification ....................................................... 18

III.  OVERALL CONCLUSION ............................................. 19

1

2

# Table of Authorities

3

U.S. SUPREME COURT CASES

4   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................................12

5   Bradley v. Fisher, 80 U.S. 335, 352 (1872) ....................................................................................7

6   *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)....................................11

7   *Stump v. Sparkman*, 435 U.S. 349 (1978) ...................................................................................6, 7

8   United States v. Cotton, 535 U.S. 625, 627, 122 S. Ct. 1781, 1783 (2002).....................................6

9

FEDERAL CASES

10

11   *Eliahu v. Jewish Agency for Israel,* 919 F.3d 709, 713-14 (2d Cir. 2019) .................................16, 17

12   *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005)...........................17

13   *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003) ................................................................10

14   *Richardson Greenshields Sec., Inc. v. Mui-Hin Lau*, 825 F.2d 647, 652 (2d Cir. 1987)...................16

15   *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23 (2d Cir. 1986) ..............................................................15

16   *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) ..............................................................10

17

STATUTES

18

19   Cal. Code Civ. Pro. § 391 ..........................................................................................................16

20   Cal. Penal Code § 67....................................................................................................................9

21   Fed. R. Civ. P Rule 55..................................................................................................................8

22   Fed. R. Civ. P. 12(b)(6) ..............................................................................................................12

23   Fed. R. Civ. P. Rule 12(a)(1).......................................................................................................11

24   Fed. R. Civ. Pro. Rule 37(b)........................................................................................................12

25

26

27

28

**RESPONSE TO ORDER TO SHOW CAUSE**
(Why non-party G. Scott Sobel should not be held in Contempt)

## I.     INTRODUCTION

After dismissing his sex-abuse case with prejudice, the Honorable Katherine Polk Failla has issued a "vexatious litigant" injunction against Plaintiff Rovier Carrington ("Carrington"), prohibiting him "from filing any future suits in federal or state court arising from or relating to the subject matter in the instant action" (hereafter, "Injunction"). The litigation in the instant action is notable for what appears to be its complete lack of adherence to the Federal Rules of Civil Procedure.

In opposition, Carrington has filed PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE, and DECLARATION OF ROVIER CARRINGTON. (Doc. # 196, erroneously docketed as "LETTER RESPONSE in opposition to Motion.") Concurrently, Carrington filed PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM FINAL JUDGMENT, ORDER OR PROCEEDING under FRCP Rule 60, with DECLARATION OF ROVIER CARRINGTON. (Doc. # 197, erroneously docketed as "LETTER MOTION to reopen case.")

The erroneous re-naming of Carrington's recently filed papers is noteworthy, because it makes it *appear* as though Carrington is consenting to jurisdiction under Judge Failla's "Individual Rules of Practice in Civil Cases" (which the law does not recognize), when actually Carrington would appear to be operating under the Federal Rules of Civil Procedure, which authorizes, e.g. a Motion for Relief from Order at Rule 60, but not a "Letter Motion" as termed by Judge Failla.

Attorney G. Scott Sobel, Esq. ("Sobel") joins Carrington in opposing any finding of contempt of court and will repeat certain arguments advanced in Carrington's Response which apply as well to Sobel. In addition, Sobel will offer arguments specific to his position as a non-party here, and as Carrington's attorney of record in the Civil Rights case now pending in the Central District of California.

## II.     ARGUMENT

### A.     Legal Standard To Disregard Void Injunction

Judge Failla undisputedly issued what purports to be an injunction prohibiting litigation of Carrington's sex-abuse claims, but there is no duty to obey a void injunction. The United States

Supreme Court has long held that if a court issuing an injunction does not have jurisdiction, the order or injunction is said to be void, and to be a nullity; it **may be disregarded with impunity**. *In re Sawyer*, 124 U.S. 200, 220 (1888); *In re Ayres*, 123 U.S. 443, 485-86 (1887); *Exparte Fisk,* 113 U.S. 713, 718 (I885); *Ex parte Rowland*, 104 U.S. 604, 612 (1881); see *Exparte Young*, 209 U.S. 123, 143 (1908); *2 High, Injunctions* § 1425 (4th ed., 1905); *Moskovitz, Contempt of Injunctions, Civil and Criminal*, 43 Col. L. Rev. 780, 782 (I943); *Cook, The Powers of a Court of Equity*, 15 Col. L. Rev. 106-7 (1915); *Liability of Lawyer for Advising Disobedience*, 39 Col. L. Rev. 433-47 (1939). For a discussion of the distinction in terms of judgments generally, see *Black, Law of Judgments* §§ 170, 2JP, 278 (2d ed., 1902).

While the above citations are over a century old, they remain the law. No court has said otherwise since.

**B.     Sobel Must Not Be Held In Contempt Because Judge Failla Lacked Jurisdiction to Order Injunction**

**1.     <u>Challenge to Subject Matter Jurisdiction is Never Forfeited or Waived</u>**

The Supreme Court finds that a challenge to the Court's subject matter jurisdiction is *always* timely:

> The term "jurisdiction" means the courts' statutory or constitutional power to adjudicate the case. This concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can ***<u>never be forfeited or waived</u>***. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.

*United States v. Cotton*, 535 U.S. 625, 627, 122 S. Ct. 1781, 1783 (2002), emphasis added.

**2.     <u>Judge Failla Acted in the Complete Absence of Jurisdiction</u>**

Here, Judge Failla plainly usurped jurisdiction by conducting the entire proceeding under the "Individual Rules of Practice in Civil Cases," rather than under the Federal Rules of Civil Procedure, as the law requires. A total want of jurisdiction – as opposed to a mere excess of jurisdiction - will be demonstrated in the following discussion of Judicial Immunity, which turns on whether a judicial officer acted in the complete absence of jurisdiction. The appropriate standard for evaluating a complete absence of jurisdiction is given in the landmark Supreme Court case *Stump v. Sparkman*, 435 U.S. 349 (1978) ("*Stump*").

*Stump* sets out a two-prong test to determine whether the judge's act was a "judicial act," and

thus immunized. The first factor - whether the act was a function normally performed by a judge - relates to the "nature of the act itself." *Stump, supra,* at 362. The second factor - whether the parties dealt with the judge in his/her judicial capacity - looks to the "expectations of the parties." *Id.* Judge Failla must satisfy both prongs to avoid a finding that she lacked all jurisdiction, and it will be shown that she can satisfy neither.

### a) Judge Failla Cannot Meet the First Prong of the Stump Test.

Under the first prong, the Court must distinguish between "excess of jurisdiction" and "clear absence of jurisdiction." It might be argued that a judge acts in the clear absence of jurisdiction when acting in the absence of any particular statutory authority on point. That argument was made in *Stump*, but failed because, as Justice White explained:

> ...[I]t is more significant that there was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump.

*Stump, supra*, at 358.

Thus, a first-prong Judicial Immunity analysis under *Stump* will focus on whether or not there exists a statute or case law prohibiting the judge from undertaking the injurious acts complained of. Put plainly, it is not enough for Sobel to show that no law explicitly authorized the judge's act. Rather, Sobel must affirmatively show there *is* a law prohibiting the judge's act, and it will be shown here. The Supreme Court has long ago offered a hypothetical example illustrating the distinction:

> A judge of a probate court who held a criminal trial would act in clear absence of all jurisdiction over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction.

*Bradley v. Fisher,* 80 U.S. 335, 352 (1872) ("*Bradley*").

The Supreme Court could not be any more clear: A judge of one type of court who purports to act in a completely different court system is acting in the clear absence of jurisdiction.

Beginning with her June 4, 2018 Order (Doc. 13 Notice of Initial Pretrial Conference) and continuing thereafter, Judge Failla acted under color of law and in the clear absence of jurisdiction by

1  conducting a series of "Letter Motions" as authorized only by her own "Failla Individual Rules of
2  Practice in Civil Cases," instead of and in absolute violation of the Federal Rules of Civil Procedure.
3  In so doing, Judge Failla established and operated her own independent court system, entirely distinct
4  from the United States District Court, which operates under the Federal Rules of Civil Procedure
5  ("FRCP"), and in which the "Individual Rules of Practice in Civil Cases" are unknown and foreign.
6  While Sobel does not dispute the propriety of local rules as such, any system of local rules must not
7  conflict with the Federal Rules.  *Supra.*

8       The "Failla Rules" allow for unilateral Discovery by Defendants who have not even filed a
9  responsive pleading. Not so under the Federal Rules, where Defendants have 21 days to respond to
10  the Complaint, after which Plaintiff may request Entry of Default, and then file a Motion for a
11  Default Judgment. See FRCP Rule 55. No Default was allowed here, because the "Failla Rules" state
12  that "communications with the Court should be by letter." Failla Rules, 2B. The notion that any party
13  to a lawsuit in the United States District Court could conduct Discovery prior to Discovery having
14  been opened, as set forth in the FRCP Rule 26 Scheduling Order, is completely unknown and foreign
15  to the Federal Rules.

16       Therefore, the Court must find that Judge Failla's conduct perfectly fits the *Bradley* Benchmark
17  test. Judge Failla did not make Orders as a Judge of the United States District Court, because any
18  such order must by necessity be in accordance with the Federal Rules of Civil Procedure. Rather,
19  Judge Failla made "Orders" as a "Judge" in her own "Court of Katherine Polk Failla," and in
20  accordance only of the "Failla Individual Rules of Practice in Civil Cases," and certainly not under
21  the Federal Rules of Civil Procedure, or anything else authorized under the United States
22  Constitution.

23       Therefore, the Court should find that Judge Failla cannot meet the first prong of the Stump test.
24  For a District Court Judge to conduct any proceedings or to make any orders whatsoever under
25  "authority" of this self-drafted and self-serving "Individual Rules of Practice in Civil Cases" - which
26  purports to abide by, but actually overrules the Federal Rules of Civil Procedure - constitutes action
27  in the clear absence of jurisdiction.

28  / / /

### b) Judge Failla Cannot Meet the Second Prong Either

The second prong of the *Stump* test requires the Court ask about the expectations of the parties. Carrington came to Judge Failla's courtroom expecting that matters would be conducted in accordance with the Federal Rules of Civil Procedure.

Carrington did not expect, and could not possibly have expected, that Judge Failla would instead conduct matters in accordance with her own "Individual Rules of Practice in Civil Cases," which completely contradict the Federal Rules of Civil Procedure, and destroy essentially all of the procedural rights which the Federal Rules of Civil Procedure are meant to uphold.

Therefore, the Court should find that Judge Failla cannot meet the second prong of the *Stump* test. No party to any proceeding reasonably expects any judge to ignore statutory, black letter law such as the Federal Rules of Civil Procedure, in favor of her own self-drafted and self-serving unconstitutional substitute document, the "Failla Individual Rules of Practice in Civil Cases."

Thus, the Court must find that Judge Failla cannot meet either prong of the *Stump* test, and must therefore conclude that Judge Failla's actions were acts taken in the clear absence of jurisdiction, and not merely in excess of jurisdiction.

Each of Judge Failla's purported orders was directed toward the ultimate goals of destroying Carrington's rights to petition and jury trial, and inflicting severe emotional distress and severe financial hardship upon him, and to thereby shield Carrington's legal adversaries from justice. Having taken an oath of office to uphold the Constitution, Failla knew of her duties, and made a conscious, deliberate and intentional decision to violate those duties.

While the hurdle to overcome judicial immunity is high, it is not infinite. The Ninth Circuit explained that judicial immunity is lost when: "there was a genuine issue of fact whether … attorneys induced … [a] judge to violate [Plaintiff's] rights." *Rankin v. Howard*, 633 F.2d 844, 846 (9th Cir. 1980) ("*Rankin*").

Here, and similarly to *Rankin*, there is a genuine issue of fact whether attorneys induced Judge Failla to violate Carrington's rights. As discussed in detail within the now-pending Civil Rights case naming Judge Failla as a defendant, Carrington reasonably believes, and on that basis alleges, that Judge Failla's "order" dismissing his case with prejudice, her Injunction enjoining Carrington from all litigation on his claims of sex-abuse, and her "orders" of terminating sanctions and attorney fees in excess of $600,000, are all motivated by her having accepted a bribe, as defined in Cal. Penal Code § 67 et. seq.

Carrington has no direct evidence of bribery. He has not seen money change hands, nor a cancelled check with a memo line reading "bribe to judge." But bribery and corrupt influence are reasonable inferences given the undisputed fact that Carrington's prior sex-abuse case was dismissed with prejudice with *no consideration of the merits*, as well as the following "orders," including the instant proceeding, all in lockstep with the requests of defense counsel herein. These clearly unjust results were only made possible because Judge Failla was not operating under the Federal Rules as the law requires.

Under the Federal Rules, Judge Failla could not possibly have allowed Defendants to conduct discovery upon Carrington until after the Rule 26 Scheduling Order, which could not possibly have been made until after the pleadings were settled, which could not possibly have been settled until there actually were pleadings *to* settle, which there never were.

### c)  Conclusion to Complete Absence of Jurisdiction

Therefore, the Court must find that the Dismissal and the Injunction are each Void because each was issued in the complete absence of jurisdiction.

/ / /

/ / /

/ / /

**3.** **The Orders of Dismissal and of Injunction Were Issued in a Manner Inconsistent With Due Process**

**a) Legal Standard to Show Due Process Violation**

If Carrington can show a due process violation, then no Contempt will lie against Sobel. To state a Substantive Due Process claim, Carrington must show as a threshold matter that a State Actor deprived him of a constitutionally protected life, liberty or property interest. *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). Procedural Due Process claims look for State action that "shocks the conscience," and requires that the Plaintiff show (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003).

The right to petition is a constitutionally-protected fundamental right. U.S. Constitution, Amend. I. Here, Judge Failla willfully and intentionally destroyed Carrington's right to petition, by destroying his right to litigate in reliance on the Federal Rules of Civil Procedure, and instead substituting an entirely foreign "Individual Rules of Practice in Civil Cases."

**b) Neither Defendants Nor Judge Failla Cite Any Legal Authority Authorizing Discovery**

Neither Defendants nor Judge Failla have cited *any* legal authority for conducting Discovery upon Carrington. Defendants' only effort to do so appears to be in Defendants' instant Memorandum of Law ("Dft. Memo."), which asserts:

> Consistent with discovery practice regarding potential fraud on the Court, the Court ordered expedited discovery into the authenticity of these email communications in August 2018.

Defendants' Memo, p. 6, citing Dkt. No. 180 (the Injunction) at 3.

A careful review of the Injunction, indeed a review of this entire case, reveals that neither Defendants nor Judge Failla ever cite any law or any legal authority of any kind that authorized Defendants to conduct Discovery prior to the Rule 26 Scheduling Order (which was never made).

9

Whatever results might be "consistent with discovery practice" under the Federal Rules of Civil Procedure are entirely beside the point, because no "discovery practice" took place here.

### c) Carrington Was Never Served Notice of Any Legal Proceeding

An elementary and fundamental requirement of Due Process in any proceeding which is to be accorded finality is Notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)

Under the Federal Rules of Civil Procedure, each Defendant is required to file a responsive pleading within 21 days of being served. See FRCP Rule 12(a)(1). Under Judge Failla's "Individual Rules of Practice in Civil Cases," there is no duty for Defendant to file a responsive pleading at all. Instead, the "Individual Rules of Practice in Civil Cases" allow a Defendant to file a "response" (not a pleading), which in this case meant that Defendants were allowed to completely ignore Carrington's actual sex-abuse case, to commence Discovery proceedings against Carrington, then in effect to prosecute Carrington for his supposed spoliation of evidence, which amounted to a prosecution against Carrington for being an alleged false accuser, and/or for Carrington's supposedly malicious attempt to prosecute Defendants.

Stylized as a "Letter Motion for Further Discovery," but occurring at a time when Discovery *had never opened* in the case, Judge Failla improperly granted Defendants' "Letter Motion" to commence "further" discovery proceedings against Carrington. Once armed with that, through a succession of "Letters" to Judge Failla, Defendants were allowed to effectively sue Carrington in Judge Failla's private court system, under what amounts to a Malicious Prosecution theory. Defendants assert that Carrington's sex-abuse claims are baseless, and that he manipulated email evidence to make false accusations against them.

But the Federal Rules of Civil Procedure are well-equipped for Defendants to effectively

respond to a meritless lawsuit, and that is with a Motion to Dismiss under FRCP 12(b)(6). Under the heightened pleading standard articulated by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), in meritless cases defendants have no difficulty obtaining quick dismissals. And once that dismissal is obtained, Defendants to a meritless action may *then* proceed on a malicious prosecution claim. At most, Defendants would be allowed to litigate counterclaims at the same time as Carrington's claims.

Under the Federal Rules of Civil Procedure, Discovery opens after the completion of the disclosures under FRCP Rule 26, which only occurs after the pleadings are settled, which is all explained in the mandatory Scheduling Conference Order. But under the Judge Failla's "Individual Rules of Practice in Civil Cases," Defendants may be authorized to commence unilateral Discovery – on what amount to counterclaims against Carrington – prior to *any* responsive pleading or FRCP Rule 26 compliance.

In that it resulted in the Dismissal and the Injunction, the closest comparison between Defendant's "Letter Motions" here under the "Individual Rules of Practice in Civil Cases" and any combination of procedures known under the Federal Rules of Civil Procedure would be a combination of a Rule 12 Motion to Dismiss and a subsequent separate lawsuit the other direction for Malicious Prosecution. While the Federal Rules do contemplate terminating sanctions for egregious Discovery violations –see FRCP Rule 37(b) and Rule 37(e) – clearly that procedure was not accessed by Defendants here, nor could it possibly have been. Discovery never opened.

Moreover, under the Federal Rules, a Rule 12 Motion to Dismiss, a Summary Judgment, (or *any* dispositive motion) would require the Court to assume as true all of Carrington's well-pleaded allegations, and dismiss the case with prejudice only if Carrington still could not plausibly state any claim. See *Twombly, Iqbal, supra* and progeny.

But under Judge Failla's Rules, the Court was free to engage in fact finding regarding

1  Defendants' claims against Carrington, while allowing absolutely no factual inquiry whatsoever into

2  Carrington's underlying sex abuse claims. All of Judge Failla's fact-finding was in the face of

3  Carrington's demand for a jury trial, and for a jury to try the facts of the case. None of what actually

4  occurred in this case was authorized by the Federal Rules, and none of what the Federal Rules

5  mandate actually occurred in this case.

6

7       By avoiding all substantive process and procedure mandated by the Fourteenth Amendment, as

8  codified in the Federal Rules of Civil Procedure, and proceeding instead under Judge Failla's own

9  "Individual Rules of Practice in Civil Cases," Defendants were permitted to sue Carrington for over

10 One-Half Million dollars in attorney fees, while completely ignoring Carrington's sex-abuse claims,

11 as if they did not exist. In fact, as soon as Judge Failla Ordered that the prior case would proceed

12 under the "Individual Rules of Practice in Civil Cases" - which directly conflicts with the entirety of

13 the Federal Rules of Civil Procedure and all applicable case law - Rovier Carrington's prior claims

14 essentially *did cease to exist.* In no sense can Rovier Carrington be said to have had his "day in

15 court."

16

17       Defendants never prevailed and could not possibly have prevailed on Carrington's sex-abuse

18 claims against them, because, as Judge Failla openly admits in her purported Order of September 11,

19 2020 (Dkt. 180), she never reached any consideration of the merits of Carrington's case. See

20 EXHIBIT 002, p. 97, attached to Dkt. 196, Plaintiff's Response to Order To Show Cause.

21       Not only were Defendants not required to file a responsive pleading, it is unclear how they could

22 have done so even if they had intended to, in light of Judge Failla's "Letters Only" Rule. See Failla,

23 "Individual Rules of Practice in Civil Cases," § 2B.

24

25       Regarding motion practice, the Federal Rules of Civil Procedure and its associated case law

26 establish the processes to which Rovier Carrington was and is legally entitled under the Due Process

27 clause. Here, Carrington was stripped of any ability to prosecute or to defend Motions according to

28

---

12

the Federal Rules of Civil Procedure, because that was simply not the body of law Judge Failla chose to obey. Instead, Judge Failla obeyed and asserted "jurisdiction" under her own "Individual Rules of Practice in Civil Cases," which has a completely different set of rules. The litigation in this case to date occurred in a United States District Court *in name only*. For all intents and purposes, the litigation occurred in an independent, foreign court system of Judge Failla's making.

Because he was unaware that the Federal Rules of Civil Procedure were not going to be controlling law in his case, it follows that Rovier Carrington could not possibly have been given legally sufficient Notice of any type of action against him, let alone an action that would result in the Dismissal or one that would result in the Injunction.

During the litigation, had Rovier Carrington been aware that the Federal Rules of Civil Procedure were not going to be controlling law in his case, and that Judge Failla's own "Individual Rules of Practice in Civil Cases" would control instead, Carrington could have immediately petitioned the Court of Appeal, or petitioned the United States Supreme Court, for a Writ of Mandate, arguing that his Due Process rights had been destroyed by the existence and enforcement of Judge Failla's "Individual Rules of Practice in Civil Cases," in what amounts to Judge Failla's own independent Court system.

It is therefore *not legally possible* that Rovier Carrington was served legally sufficient Notice of any proceeding in Judge Failla's courtroom at any time, because with regard to Rovier Carrington, no legal proceedings herein have ever taken place in Judge Failla's courtroom at any time.

Judge Failla's purported jurisdiction under her own "Individual Rules of Practice in Civil Cases" constitutes nothing less than the creation of her own independent Court System, completely outside the United States District Court, and operating completely outside of, and in contradiction to, the Federal Rules of Civil Procedure.

Such facts *shock the conscience*.

### d) Conclusion to Due Process

Therefore, the Court should find that all orders issued by Judge Failla in this prior Carrington litigation are Void for lack of Substantive and Procedural Due Process. For that reason, the Court cannot find Sobel in Contempt.

> **C.**   **Even Assuming Proper Jurisdiction, Sobel Must Not Be Held In Contempt Because Consideration of the Merits Is An Essential Element of Any Constitutional Vexatious Litigant Injunction**

For sake of discussion, Sobel accepts Judge Failla's citations of the law regarding vexatious litigant injunctions. It will now be shown that each and every one of these cases stand squarely for the proposition that, to pass constitutional muster, a vexatious litigant injunction may only issue in the wake of a consideration of *the merits*, i.e. precisely what Judge Failla admits she did not do.

> **1.**   **_Safir_ Stands for the Proposition that the Court Must Consider the Merits**

Citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23 (2d Cir. 1986) ("*Safir*"), Judge Failla notes that it "'is beyond peradventure' that this Court possesses the authority to enjoin Carrington from further vexatious litigation." Injunction, p. 10.

Here, it is legally impossible to enjoin Carrington from *further* vexatious litigation, because there has never been a finding that Carrington engaged in *any* vexatious litigation. Such a finding positively requires an examination of the merits of the case or cases in question, as Judge Failla's own citation confirms. Let us examine *Safir*.

In *Safir*, plaintiff got his day in court in 1966 as he "instituted a 'corporate treble damage suit' against defendants and others, which ultimately was settled … with all defendants for approximately $2.5 million." *Safir, supra,* at 20. In 1969, Safir filed another case that came to be known as "Safir I," in which he apparently prevailed, as the 2nd Circuit "reversed the district court's dismissal of Safir's suit."

"Had the above claims represented the totality of Safir's legal battle against these defendants," the Court continued, "this case would be **unexceptional**. Over the years, however, Safir has multiplied the number of legal proceedings aimed at redressing the injuries suffered by Sapphire." *Safir, supra,* at 21, bolding added.

In 1985, the District Court "denied Safir's motion for a preliminary injunction on the grounds

1  that Safir had not established either 'a likelihood of success **on the merits**' or 'a sufficiently serious

2  **ground** for litigation…'" *Safir, supra,* at 21-22. After considering *the merits* of Safir's new litigation,

3  in light of the clear fact that Safir had already gotten his day in court, indeed *multiple* adjudications,

4  the Court properly explained that, "A district court not only may but should protect its ability to carry

5  out its **constitutional** functions against the threat of **onerous, multiplicitous, and baseless**

6  litigation." *Safir, supra,* internal cites removed, emphasis added.

7         This Court would do well to heed *Safir's* guidance: To be constitutional, a vexatious litigant

8  injunction must come only after a finding that new litigation would be onerous, multiplicitous and

9  baseless, i.e. that the litigation *lacks merit.* Here, Judge Failla openly admits that she does not

10  consider and evidently does not care "which, if any, of Carrington's claims are meritorious."

11  Injunction, p. 13. This is a clear admission that, under *Safir,* Judge Failla's issuance of the Injunction

12  was unconstitutional.

13         **2.   <u>Eliahu Stands for the Proposition that the Court Must Consider the Merits</u>**

14         Citing *Eliahu v. Jewish Agency for Israel,* 919 F.3d 709, 713-14 (2d Cir. 2019) ("*Eliahu*"), Judge

15  Failla notes that, "In determining whether to restrict a litigant's future ability to sue, a court **<u>must</u>**

16  consider 'whether a litigant who has a history of vexatious litigation is likely to continue to abuse the

17

18  judicial process and harass other parties.'" Injunction, p, 10, emphasis added.

19         Here, Judge Failla admits that she failed to do precisely what *Eliahu* insists that she *must* do.

20  Carrington does not have a history of *vexatious* litigation, because such a finding positively requires a

21  finding regarding the merits. For a reasonable definition of "vexatious," we may turn to California's

22  Code of Civil Procedure § 391 (upon which New York's pending Assembly Bill A6843 is modeled),

23  which authorizes a pre-filing injunction against litigants *in pro per*, and who have either (a) lost 5

24  lawsuits in the last 7 years, or (b) "repeatedly files **unmeritorious** motions, pleadings, or other

25  papers, conducts **unnecessary discovery**, or engages in other tactics that are **frivolous** or solely

26

27  intended to cause unnecessary delay". Cal. Code Civ. Pro. § 391, emphasis added.

28         While unrepresented here, Carrington's new lawsuit in Los Angeles federal court is brought by

---

15

and through a licensed attorney. But even leaving that fact aside, a finding of "vexatious" inescapably must be based on a consideration of the merits. As *Eliahu* explains:

> [a]bsent extraordinary circumstances, such as a demonstrated **history of frivolous and vexatious** litigation," a court has no power to prevent parties from filing legal documents authorized by the federal rules)

*Eliahu, supra* at 714, quoting *Richardson Greenshields Sec., Inc. v. Mui-Hin Lau*, 825 F.2d 647, 652 (2d Cir. 1987)

Here, Carrington has no history of frivolous or vexatious litigation, because such findings require an examination of the merits.

### 3. *Iwachiw* Stands for the Proposition that the Court Must Consider the Merits

Citing *Eliahu, supra*, which quotes *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005), Judge Failla correctly recites the elements a District Court must consider regarding a pre-filing injunction:

> [i] the litigant's history of litigation and in particular whether it entailed vexatious, harassing[,] or duplicative lawsuits; [ii] the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing? [sic]; [iii] whether the litigant is represented by counsel; [iv] whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and [v] whether other sanctions would be adequate to protect the courts and other parties.

Injunction, p. 10-11.

Here, Carrington [i] has no history of vexatious, harassing or duplicative lawsuits, for such findings are legally impossible absent a consideration of the merits; [ii] has no finding that his sex-abuse claims are brought in bad faith, for such findings are legally impossible absent a consideration of the merits; [iii] was previously, but is not now represented by counsel in this case; [iv] has no finding that any expenses incurred by Defendants were "needless," because such findings are legally impossible absent a consideration of the merits; and [v] admits that the Court is acting to protect the

Defendants, but not from any "vexatious" litigation, as no such finding has been or possibly could have been made. Rather, the Court is acting to protect the Defendants from *meritorious* litigation.

Indeed, the expenses incurred by Defendants here must not properly be considered the costs of *defense* at all. It is obvious from the record in this case that Carrington was allowed absolutely no legal process whatsoever on his affirmative claims. Defendants never even filed a responsive pleading. Rather, all of the expenses that Defendants incurred were the cost of pursuing illegal and unauthorized Discovery *against* Carrington, on what amounted to Defendants' counterclaims *against* Carrington.

### 4. Conclusion to the Unconstitutionality of the Injunction

Therefore, even assuming Judge Failla had jurisdiction to make any orders at all, the order of Injunction is unconstitutional, null and void. For that reason, the Court cannot find Sobel in Contempt.

### D. Regardless of Anything Else, This Court Lacks Jurisdiction to Make Any Order In The Central District of California

Citing no authority whatsoever, Defendants here seek an order, and Judge Failla adopts in her Proposed Order:

> That Plaintiff Rovier Carrington and counsel G. Scott Sobel, Esq. shall dismiss the CDCA Complaint with prejudice forthwith, and no later than two business days from the Court's finding of civil contempt;
>
> That G. Scott Sobel, Esq. shall immediately withdraw from representation of Mr. Carrington in the CDCA action, and from any other pending action arising from or relating to the subject matter in the instant action;

Proposed Order, p. 2

The Injunction is void for the complete absence of jurisdiction. *Supra.* The Injunction is unconstitutional and void for lacking any basis in the law. *Supra.* But even if there were a basis in jurisdiction and in law (there are neither), this Court *still* would lack jurisdiction to make any sort of order in the Central District of California. Neither Judge Failla nor Defendants have cited any law

that would authorize such an order.

### E. Regardless of Anything Else, Judge Failla Is Disqualified and Must Recuse

#### 1. Legal Standard to Disqualify

Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned.

(b) [She] shall also disqualify [herself] in the following circumstances:

(1) Where [she] has a personal bias or prejudice concerning [Rovier Carrington].

28 U.S.C. § 455

#### 2. Judge Failla's Impartiality Must Reasonably Be Questioned

Here, Judge Failla's impartiality *must* be questioned, because she has conducted an entire proceeding outside the authority of the Federal Rules of Civil Procedure. As set forth below, and also in the concurrently-filed Rule 60 Motion for Relief, Judge Failla allowed unilateral Discovery against Plaintiff Carrington prior to any defense pleading having been filed. The Federal Rules are clear: Discovery opens *after* the Rule 26 Scheduling Order, which comes *after* the pleadings are settled (i.e. the Answer to Complaint is filed), which comes *after* the pre-answer Rule 12 Motion(s), if any.

Neither Judge Failla, nor any Defendant has even attempted, let alone succeeded, in citing *any* legal authority for allowing Defendants to conduct Discovery as occurred here. The "discovery" that ensued was thus impermissible. A reasonable person, aware that Judge Failla allowed unauthorized proceedings in her courtroom, would question Judge Failla's impartiality.

Finally, Judge Failla is presently a named defendant in Carrington's newly-filed federal Civil Rights lawsuit, for which Sobel is attorney of record. A reasonable person would question Judge Failla's ability to remain impartial in the face of a pending lawsuit.

#### 3. Conclusion to Disqualification

Therefore, Judge Failla is disqualified, and must recuse.

1

## III.    OVERALL CONCLUSION

2

For all of the above reasons, this Court must not find non-party G. Scott Sobel in Contempt.

3

4

Respectfully submitted on December 14, 2020,

5

6

/s/ G. Scott Sobel

Non-Party G. Scott Sobel, *in pro per*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF ELECTRONIC SERVICE**

I am at least 18 years of age and not a party to this action. My business address is 1180 S. Beverly Drive, Suite 610, Los Angeles, CA 90035-1158, Telephone: (310) 422-7067.  My electronic service address is: GScottSobel@gmail.com. On the date below I electronically served the following document(s) to the persons on the attached service list:

## NON-PARTY G. SCOTT SOBEL'S RESPONSE TO OSC RE: CONTEMPT

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **December 14, 2020** at Los Angeles, California.

_____/s/ G. Scott Sobel_____

G. Scott Sobel

NON-PARTY G. SCOTT SOBEL'S RESPONSE TO OSC RE: CONTEMPT

1

<u>SERVICE LIST</u>

2

3

Stanton Lawrence Stein, Esq.
Diana Arielle Sanders, Esq.
Russ August & Kabat
12424 Wilshire Blvd, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
Fax: (310) 979-8222
Email: LGstein@raklaw.com
Email: dsanders@raklaw.com

4

5

6

7

8

Stephen Robert Fishbein, Esq.
Christopher Lloyd LaVigne, Esq.
Shearman & Sterling LLP (NY)
599 Lexington Avenue
New York, NY 10022
212 848-4424
Fax: 212848-7179
Email: sfishbein@shearman.com
Email: christopher.lavigne@shearman.com

9

10

11

12

13

14

Sarah Schacter, Esq.
Wook J Hwang, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
212-407-4000
Fax: 212-407-4990
Email: sschacter@loeb.com
Email: whwang@loeb.com

15

16

17

18

19

20

Courtesy copy:
Failla_NYSDChambers@nysd.uscourts.gov

21

22

23

24

25

26

27

28

NON-PARTY G. SCOTT SOBEL'S RESPONSE TO OSC RE: CONTEMPT